**Willie F. GILL, Plaintiff,**

v.

**UNITED STATES RUBBER COMPANY,**
Defendant.

Civ. No. 1141.

United States District Court
N. D. Indiana,
Fort Wayne Division.

June 23, 1961.

838

Floyd F. Cook, Donald J. Bolinger, Kokomo, Ind., for plaintiff.

Campbell, Livingston, Dildine & Haynie, Ft. Wayne, Ind., for defendant.

GRANT, District Judge.

This matter is presently before the Court on defendant's Motion for Summary Judgment. After careful consideration of the briefs filed on behalf of both the plaintiff and the defendant by their very able counsel, the Court is of the opinion that the Motion for Summary Judgment should be denied.

Rather than set forth in detail the text of plaintiff's deposition, relied on in great part by both parties, it would appear that a brief statement of the facts will suffice here.

On or about October 26, 1956, the plaintiff, while in the employ of the defendant sustained certain injuries alleged to have been caused by the negligence of the defendant in failing to properly maintain certain machinery and to install proper safeguards on said machinery for the protection of the plaintiff. The plaintiff alleges that on or about September 5, 1957, he entered into an oral contract with the defendant whereby plaintiff agreed to release the defendant of any and all liability resulting from the above-mentioned injuries in consideration for a promise of life employment with the defendant at a job he could perform in view of his physical injury, and 325 weeks of disability under the Workmen's Compensation Act of the State of Indiana. Burn's Ann.St. § 40–1201 et seq. Plaintiff alleges that he continued to work for the defendant under the aforementioned contract until January 5, 1959, at which time he was discharged without cause. Plaintiff asserts that owing to his physical disability his attempts to obtain other employment have been unsuccessful. Damages for breach of contract in the amount of $138,115.34 are demanded.

The core of the defendant's argument in favor of Summary Judgment is that at the time the defendant's representative, Mr. Frey, told the plaintiff, in reply to the latter's inquiry, that he had lifetime employment with the defendant as long as he did his work and held up. There was no discussion or mention of the Workmen's Compensation benefits to which the plaintiff was entitled and would accept. The meeting at which the promise of lifetime employment was alleged to have been made was on September 5, 1957, according to the deposition of the plaintiff himself. The defendant contends further that by the plaintiff's own deposition it is undisputed that lifetime employment was never again discussed or mentioned between the plaintiff and representatives of the defendant. Further, that plaintiff admits not taking the basis of settlement under Workmen's Compensation originally offered by the defendant, but instead secured the advice of a member of the Industrial Board as to the extent of compensation benefits to which he was entitled, and did, thereafter, agree to settle with the defendant only on the basis of an increased award over and above the initial offer made by the defendant, despite the defendant's initial refusal to so increase the award.

In short, defendant contends that by plaintiff's own admission, there was no agreement, the terms of which released the defendant from liability in consideration for compensation benefits plus lifetime employment. In fact, defendant asserts that plaintiff's efforts in contacting the Industrial Board representative

and obtaining from him advice as to the extent of benefits to which he was entitled under the Workmen's Compensation Act, and then settling with the defendant for that amount, wholly demonstrates the failure of a promise on the part of the plaintiff to forbear the exercise of a legal right, privilege or power which would constitute a consideration for the alleged contract.

The plaintiff contends that the compensation benefits were increased because the Industrial Board would not otherwise approve a lesser amount. Further, the plaintiff stated in his deposition that when he settled his claim with the defendant he did so in reliance upon the earlier promise of lifetime employment. Plaintiff's position is well stated in the concluding paragraphs of his brief in opposition to defendant's Motion for Summary Judgment, quoted below:

"From the foregoing testimony, it is apparent that the offer of lifetime employment by the defendant was never at any time withdrawn. It is further apparent that the reason why the settlement under workmen's compensation was raised from 50% to 65% was because the Industrial Board would not approve a lesser settlement. This evidence further shows that the plaintiff was never examined by a doctor of his choice, never had the benefit of legal counsel, but depended entirely upon the promises of the defendant, both as to compensation and the lifetime employment. That plaintiff's main concern was his security in the future and that when he was promised a lifetime job he was willing to go along with the defendant in all other respects.

"From plaintiff's testimony, we can see that he relied upon defendant's promise of lifetime employment and that this was a motivating factor in his settlement under the Workmen's Compensation Law; that such promise was relied upon by plaintiff and that his reliance thereon was to the benefit of the defendant in that plaintiff abstained from taking any action against the defendant for the injuries he had received. Plaintiff feels that it is a reasonable interpretation of the evidence and one which should properly be decided by a jury, that failure of the defendant to ever withdraw their offer of lifetime employment, which offer constituted a part of the consideration for settling plaintiff's injuries, together with the compensation that he received, constituted a contract between the parties, relied upon by the plaintiff and benefiting the defendant.

"That the jury would be further warranted in finding that the plaintiff's forbearance in exercising his legal rights, privileges and powers, in connection with his injuries, constituted good and sufficient consideration. That the jury would be further warranted in finding that the defendant knew that plaintiff was relying upon defendant's promise of lifetime employment as part of the consideration for settling his claims for his injuries, together with his forbearance to exercise his legal rights, and that failure of the defendant to withdraw their offer of lifetime employment before plaintiff settled for his injuries, would constitute a contract under the applicable law.

"It would reasonably appear that there is a factual situation existing, so that this is not a proper case for a summary judgment."

In general, the Court is in agreement with the above-quoted position of the plaintiff. Reference to American Law Institute's Restatement of Contract, Section 90, reads as follows:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Corbin, in his treatise on contracts, discusses the doctrine of promissory estoppel and the American Law Institute's restatement of it. The Court adopts the following statement taken from Volume I of that treatise:

"If action or forbearance in reliance on a promise be accepted as a sufficient reason for enforcing the promise, as it surely must be, even though we are no longer to describe it as a "consideration" no such definite statement as the above can be made as to the extent of the action or forbearance that is necessary to make it sufficient for the purpose. Some helpful statements can be made. The supposed definiteness and uncertainty of any rule of law is partly an illusion; and it is always a matter of degree. The degree of uncertainty in the action in reliance doctrine is far from being the greatest among our existing rules of law.

"*First, it can be said with assurance that the action or forbearance must amount to a substantial change of position.* The abandonment of a peppercorn or the turning over of the hand will not be enough. A generous promise of a gift of $100 will not be made enforceable by the fact that the promisee walks a few blocks to the bank in the reasonable belief that the promise will there be performed. Of course, in every case the question will arise, what is substantial? It cannot be answered by a formula. *It is a matter of fact, to be determined by court and jury under appellate supervision as in other cases.* Not only is it a matter of fact; it has no absolute standard of measurement. Beyond doubt, it is relative to the other circumstances and especially to the content of the promise and the cost to the promisor of his promised performance. As the history of this doctrine has shown, it is closely related to, or a part of, the even more elastic and uncertain doctrines of estoppel.

"In determining whether or not the action in reliance is substantial, a court should face its responsibility with open eyes, knowing that here, at least, the just answer cannot be arrived at by any deductive logic or by a mechanical jurisprudence. It will always require an experienced judgment, a knowledge of the ways and feelings of men and of the social mores of the time. The writer is willing to suggest that the relative economic needs and capacity of the parties and the needs and interests of the promisor's dependents and creditors should be taken into consideration, particularly in determining the form of remedy and the extent of the recovery. The more free and flexible the court is willing to be in determining the extent of the recovery, the more variation is made possible in applying such a requirement as that the action in reliance must be 'substantial'.

"*Secondly, it can be said with equal assurance that the action of forbearance must either have been actually foreseen by the promisor, or must be of such a kind as a reasonable person in his position would have foreseen when making the promise. This, too, raises a question of fact for court and jury;* but it is a question with which they are already familiar. There are existing standards, created in such fields of law as negligence and the interpretation of agreements, in the application of which the courts have already acquired much experience.

"*Thirdly, an actual promise must have been made and this promise must itself have induced the action or forbearance in reliance on it.* In this world of complexity, it is indeed perilous to attempt to determine the inducing cause of anything, especially the inducing cause of a human being's act or forbearance. Perilous or not, we attempt it daily and often believe that life

and death depend upon our success therein. The courts cannot avoid this question, so long as courts of justice exist. The question is with them so constantly that they are hardened to the peril, even if not quite unconscious of it.

"Section 90 of the Contracts Restatement includes all of the foregoing requirements. It adds others that make it a careful and conservative statement, though not quite a timid one. It says that the action or forbearance must be 'definite' as well as substantial. All action is definite after it occurs; so, the Institute must have meant that the promisor must have had reason to foresee the definite action or forbearance that in fact followed. Without doubt, the more keen and accurate the foresight of the promisor was, or ought to have been, the stronger is the case for enforcement. Probably, however, the standards to be applied are those that have been developed in the fields of negligence and estoppel. The action of forbearance need not be such that the promisor or anyone else could have foreseen the exact time and place of its occurrence. Definiteness, too, is a matter of degree, as the writers of the Restatement knew. We may therefore mildly approve of the requirement that the action must be 'definite' without speculating much as to its exact meaning. * * *

"*Finally, the Restatement justifies enforcement of the promise only 'if injustice can be avoided only by enforcement of the promise.'* This raises the perilous question, What is justice, without giving any rules or standards for its answer. Here, too, the courts are accustomed to the peril. But if all the other requirements of the stated rule are satisfied, does not justice always require enforcement of the promise? So far as the Restatement itself informs us, the answer is Yes. The quoted clause has the merit, how-ever, of invoking justice and reminding the court that this particular rule cannot be applied by a mechanical process. Indeed, by its very existence, the clause is a suggestion that sometimes the answer should be No." (Emphasis supplied.)

The Court is of the opinion that genuine issues of fact do exist, at least insofar as relates to the three requirements stated in Corbin above.

Therefore, it is hereby ordered, that defendant's Motion for Summary Judgment be, and the same is, hereby, denied.