Wilmer D. REKEWEG, as Guardian of Mitchell D. Onstott, a Minor, and Harvey H. Onstott, Plaintiffs-Appellants,

v.

FEDERAL MUTUAL INSURANCE COMPANY and J. B. Guthrie, Defendants-Appellees.

No. 14171.

United States Court of Appeals Seventh Circuit.

Oct. 23, 1963.

See also D.C., 27 F.R.D. 431.

J. Gareth Hitchcock, Paulding, Ohio, Howard S. Grimm, Auburn, Ind., for appellants.

William E. Borror and Leigh L. Hunt, Hunt, Suedhoff & Wilks, Fort Wayne, Ind., for appellees.

Before CASTLE, KILEY and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

This diversity action was brought in the District Court by plaintiffs-appellants, Wilmer D. Rekeweg, guardian, and Harvey H. Onstott, father, of Mitchell D. Onstott, a minor who was injured in a collision between a bicycle he was riding and an automobile driven by John S. Fett. Fett died nineteen days after the collision. Plaintiffs seek damages from defendants-appellees,[1] Federal Mutual Insurance Company, carrier of Fett's automobile liability insurance, and J. B. Guthrie, an adjuster for the insurance company. Liability is predicated upon alleged deceitful and fraudulent action of the defendants by reason of which plaintiffs assert they were barred from prosecuting their claims against the estate of Fett, whose negligence caused the collision and resulting injuries, due to failure to file claims within the prescribed statutory period.

---

1. David Peters, an Indiana attorney, who was first retained to represent the interests of the injured ward, Mitchell D. Onstott, and of plaintiff Harvey H. Onstott, was also originally named as a defendant but was dismissed from the action for a consideration. The complaint asserted liability against him on the ground of negligence through which plaintiffs' claims became barred.

The District Court granted defendants' motion for summary judgment and plaintiffs appealed.

The collision occurred in Ohio and Fett was a resident of Ohio. The parties agree that plaintiffs' alleged causes of action for being fraudulently prevented from presenting their claims against decedent's estate in Ohio are governed by the law of Ohio, where the loss occurred.

The pertinent facts disclosed by the pleadings and the affidavits and documents presented in connection with the motion for summary judgment may be summarized as follows.

The collision giving rise to the injuries to and hospitalization of Mitchell D. Onstott occurred on May 25, 1958. John S. Fett, the allegedly negligent driver of the automobile involved, who was defendants' insured, died June 13, 1958. In June 1958, David Peters, a Fort Wayne, Indiana, attorney was retained to represent the Onstotts' interests. Defendant Guthrie, an adjuster representing the defendant insurance company called on the boy's mother on June 18, 1958. She refused to discuss the matter and referred Guthrie to the Onstotts' attorney, David Peters. Guthrie had no further contacts with the Onstotts. He telephoned Peters and they mutually agreed to discuss the claim at a later date when more information was available.

On July 1, 1958, an administrator of Fett's estate was appointed by the Probate Court of Paulding County, Ohio. Under the law of Ohio, upon the expiration of nine months from the administrator's appointment presentation of the minor's claim against the estate was barred.

In response to a telephone call from Guthrie on August 8, 1958, inquiring whether a medical report had been received, Peters wrote Guthrie August 11, 1958, enclosing a report and requesting a discussion of the claim. Guthrie and Peters conferred on September 11, 1958. Peters had briefed the Ohio law and was aware of the time limitations governing the filing of claims against Ohio estates. Both knew of Fett's death; neither knew of any assets except the automobile; and neither knew that an administrator of Fett's estate had been appointed. In a deposition Peters testified concerning his September 11, 1958, conversation with Guthrie, as follows:

> "I stated that if I learned an estate was opened in Ohio I would communicate with him [Guthrie] and that if he learned of an estate being opened in Ohio I would like to have him advise me that such procedure had taken place. On that occasion we both concluded that as far as we knew Fett had no assets and he had no estate."

Peters further stated that the boy was still under the care of physicians and surgeons at that time and, as yet, he had no evaluation with reference to the injuries.

On September 24, 1958, Guthrie learned that Fett's estate had been opened up on July 1, 1958. He was next in Fort Wayne on October 3, 1958, at which time he telephoned Peters' office but was informed Peters was not in. He left word with one claiming to be a secretary for Peters, to tell him that Guthrie had called, and requested that she inform Peters that an estate for John S. Fett had been opened July 1, 1958. Guthrie was again in Fort Wayne on October 24, 1958, at which time he talked with Peters by telephone and was informed by him that the latest medical report Peters was expecting had not been received but that a copy would be sent to Guthrie when it was received. On December 2, 1958, Guthrie received a letter from Peters advising that Peters had requested another medical examination of the boy, which would be final, and that as soon as information was received from this examination he would be in a position to negotiate toward disposition of the matter and would advise Guthrie.

Guthrie heard no further from Peters until after April 1, 1959, the date the period for presenting a claim against Fett's estate expired. Plaintiffs had filed no claims. On May 14, 1959, Peters wrote Guthrie that Mitchell D. Onstott

had been released by his physicians and that Peters would like to talk with Guthrie with reference to the matter. Peters wrote again on June 2, 1959, inquiring if Guthrie desired to meet with him in reference to the matter. Guthrie telephoned Peters on June 3, 1959, and advised him that no payment would be made because the claim was barred. Peters did not actually learn that Fett's estate had been opened July 1, 1958, until this June 3, 1959, conversation with Guthrie.

We perceive no error in the District Court's award of summary judgment to defendants-appellees. The fact that Guthrie shortly after he learned the estate had been opened, and long before expiration of the period for filing of the plaintiffs' claims, left word at Peters' office that the estate had been opened July 1, 1958, negates the presence of intent to deceive either at the time of the September 11, 1958, conversation or thereafter. Surely, in the absence of further inquiry from Peters concerning the opening of the estate Guthrie had no basis to assume that the information had not been given to Peters and to therefore repeat the same in his October 24, 1958 telephone conversation with Peters. Peters had until April 1, 1959, to present the minor's claim against the estate and he did not contact the defendants after December 2, 1958, at which time he stated he would advise defendants when a report on the final medical examination was received and "we should be in a position to negotiate toward a termination and disposition of this matter", until May 14, 1959, after the limitation period had expired.

■ Apart from the absence of any showing of intent on the part of the defendants to deceive plaintiffs, or to induce them not to file claims against the estate, there was no misrepresentation on which plaintiffs had a right to reply. Plaintiffs' former attorney was well aware of the Ohio limitations governing the filing of claims against decedents' estates. The opening of an estate for the decedent-insured in

Paulding County, Ohio, was a fact equally accessible to both the attorney and the defendants. The September 11, 1958, conversation between the attorney and Guthrie does not import that Peters was to rely upon Guthrie to make the inquiries which might be necessary from time to time to learn if an estate had been opened, ascertain the fact, and supply Peters with the information. Nor under the circumstances here presented did the attorney have a right to rely that such was the understanding nor, under controlling principles stated in the Ohio decisions, to reply upon future silence on Guthrie's part as equating an affirmative representation that no estate had been opened and excusing inquiry on the attorney's part. Peters and Guthrie represented adverse interests and were dealing at arm's length. The attendant circumstances here are not those such as a relation of trust, or of confidence, or of inequality of condition or knowledge, which may give rise to a legal duty to communicate material matter to another and make silence in such circumstances an actionable fraud. Cf. Schubert v. Neyer, Ohio App. (1959), 165 N.E.2d 226, 231–232. And "[r]eliance—with a right to rely" is an element which "must be present if actionable fraud is to be found." Crabbe v. Freeman, Ohio Mun. Ct., (1959), 160 N.E.2d 583, 585.

Plaintiffs' reliance upon Pumphrey v. Quillen, 165 Ohio St. 343, 135 N.E.2d 328, and other cases which involved affirmative false statements and positive misrepresentations is misplaced. Such cases are not apposite on the facts of the case at bar. Here actionable fraud is attempted to be predicated upon silence under circumstances where no right to rely upon that silence existed. Cf. Sigler v. Allstate Insurance Company, 7 Cir., 319 F.2d 418, where, in affirming summary judgment for the defendant, this Court held that plaintiffs' attorney's access to sources of information which would have furnished information as to another State's statute of limitations made it unnecessary for the District Court to have resolved the apparent conflict as to whether affirmative misrepresentation

with respect thereto had been made to the plaintiffs.

The judgment order of the District Court is affirmed.

Affirmed.