**Larry EBY and Rhonda Eby, Appellants (Plaintiffs Below),**

**v.**

**YORK–DIVISION, BORG–WARNER, Appellee (Defendant Below).**

**No. 4–582A112.**

Court of Appeals of Indiana, Fourth District.

Nov. 7, 1983.

---

Jon R. Pactor, Indianapolis, for appellants.

Norman T. Funk, Hill, Fulwider, McDowell & Funk, Indianapolis, for appellee.

MILLER, Judge.

Larry Eby and his wife, Rhonda, seek reversal of the summary judgment in favor of York Division of Borg-Warner Corporation (Borg-Warner) which thereby denied the Ebys recovery on their claim for expenses incurred when they moved from Indiana to Florida in pursuit of employment. The Ebys assert that Borg-Warner offered Larry a job in Florida, but that after having moved, they discovered no job was actually available. The trial court granted Borg-Warner's motion for summary judgment on the Ebys' complaint which they contend asks for damages on the basis of (1) breach of contract, (2) promissory estoppel, (3) actual fraud, (4) constructive fraud, and (5) negligent misrepresentation. Summary judgment was inappropriate in the presence of a claim sounding in promissory estoppel and negligent misrepresentation, and we reverse and remand.[1]

## FACTS

In early 1980, Larry was employed by Borg-Warner in Indianapolis but had begun to seek a position with the same employer in Tampa, Florida. After a period of negotiations, including interviews in Florida, the Borg-Warner facility in Tampa allegedly offered Larry a job over the telephone, to begin May 19, 1980. The Ebys put their Indianapolis home on the market and moved their belongings to an apartment in Florida. Upon reporting to work, Borg-Warner supervisors informed Larry the man who hired him was no longer with the company and that there was no job for Larry. The Ebys now allege they are entitled to reimbursement for their moving expenses, wages lost while preparing to move (but not wages lost for lack of the job itself), and various sundry expenses allegedly occasioned by their reliance on Borg-Warner's promise of employment.

## DECISION

The skeletal facts above are the essential allegations contained in the Ebys' one-paragraph complaint. From them, they assert five theories of recovery, a perfectly appropriate approach to pleading. *See, e.g., Finley v. Chain,* (1978) 176 Ind.App. 66, 374

---

1. The Ebys presented one additional issue regarding their claim the trial court did not examine their depositions in reaching its decision. First of all, this error is waived for failure to include it in their motion to correct errors. *See Cunningham v. Associates Capital Services Corp.,* (1981) Ind.App., 421 N.E.2d 681. Secondly, our perusal of the record shows the trial court expressly stated in its entry of summary judgment that it had indeed reviewed the depositions so we fail to see what the Ebys are complaining about. What they do assert is that the depositions were never ordered to be published. It is true the record displays no order of publication despite Borg-Warner's motion to do so, and it appears the trial court never did so, hence the "correcting entry" for publication it sent to this court this past summer rather than a nunc pro tunc entry. Nevertheless, we fail to understand the Ebys' position attempting to appeal the absence of a ruling on *Borg-Warner's* motion. Ensuring such ruling would appear to be Borg-Warner's responsibility, not the Ebys'. *See, e.g., Abra-*

hamson Chrysler Plymouth, Inc. v. Insurance Company of North America, (1983) Ind.App., 453 N.E.2d 317. Lastly, we perceive no problem in our reviewing the depositions here on appeal. Both parties relied on the depositions in their memoranda on the motion for summary judgment at the trial level and in their appellate briefs, both facts leading us to believe the parties have impliedly stipulated to their use. In addition, the record clearly shows the trial court reviewed them and considered them in his decision. Thus, we are not confronted with the problem presented in *Hales & Hunter Co. v. Norfolk & Western Ry. Co.* (1981) Ind., 428 N.E.2d 1225, where our supreme court declared the court of appeals could not review depositions which are neither published nor considered by the trial court. In the case here, we believe the parties have sufficiently stipulated to their use to fulfill the policy considerations inhering in the publication requirement, an alternative expressly condoned in *Hales & Hunter.*

N.E.2d 67, *overruled on other grounds.* These five theories are (1) breach of contract, (2) promissory estoppel, (3) constructive fraud, (4) actual fraud, and (5) negligent misrepresentation. Each of these relies on certain additional facts, which will be included in the individual discussions and will reflect the same tenor as the facts recited above, pursuant to our standard of review for summary judgment: We must accept as true those facts alleged by the nonmovants, the Ebys. *See Bond v. Peabody Coal Co.,* (1983) Ind.App., 450 N.E.2d 542.

It is also imperative that we resolve the choice of whether to use Florida or Indiana's law in our decision. We have been presented with two types of legal theories for recovery, contract (breach, promissory estoppel) and tort (fraud, misrepresentation). Our consideration of both these choice of law problems leads us to the conclusion that Indiana law is more appropriate.

■ In contract actions, Indiana's choice of law rule is the application of the "most intimate contacts" approach. *Suyemasa v. Myers,* (1981) Ind.App., 420 N.E.2d 1334. As formulated by our supreme court, the rule has been succinctly stated as follows:

"The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact."

*W.H. Barber Co. v. Hughes,* (1945) 223 Ind. 570, 63 N.E.2d 417, 423; *Clow Corp. v. Ross Township School Corp.,* (1979) 179 Ind.App. 125, 384 N.E.2d 1077. As formulated by the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971), the following contacts are representative of the factors to consider:

"(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties."

We believe Indiana to have the more significant relationship to the contract-type behavior which evolved here. Larry was in Indiana when he accepted the job offer over the telephone. The negotiations were begun in Indiana and progressed over the telephone in Indiana and by personal appearance in Florida. Indiana was the location where the Ebys performed the alleged consideration, in promissory estoppel fashion, to support the job offer although Florida was the location of the actual subject matter, the job itself. Lastly, the Ebys resided in Indiana when Larry accepted the job while he was working at one of Borg-Warner's facilities. We deem these contacts sufficiently intimate with this state to warrant applying Indiana law to the contract theories.

■ Indiana's choice of law rule with respect to actions sounding in tort is the rule of lex loci delicti. According to that rule, the law of the place where the tort was committed is the law of the resulting litigation. *Lee v. Lincoln National Bank & Trust Co.,* (1982) Ind.App., 442 N.E.2d 1147; *Maroon v. State,* (1980) Ind.App., 411 N.E.2d 404. In claims for fraud and misrepresentation, the tort is considered to have been committed in the state where the loss occurred, typically because that is where the last event necessary to create liability has taken place. *Doody v. John Sexton & Co.,* (1st Cir.1969) 411 F.2d 1119 (misrepresentation); *Rekeweg v. Federal Mutual Insurance Co.* (7th Cir.1963) 324 F.2d 150, *cert. denied* (1964) 376 U.S. 943, 84 S.Ct. 798, 11 L.Ed.2d 767 (fraud). In the case here, the majority of the Ebys' losses—wages, moving expenses—happened in Indiana. Therefore, the Ebys' entire case is governed by Indiana law.

*Breach of Contract*

■ Foremost in the discussion of this theory of recovery must be the realization

that nowhere was there ever any express agreement that Borg-Warner would pay the Ebys' expenses for moving to Florida to take the job. The Ebys, in fact, admit as much. They instead argue that the agreement to employ Larry necessarily implied repayment of these costs. Other than wrongful discharge cases, the Ebys have cited us to no authority for this proposition, and it is not the natural inference from a mere promise of employment. In addition, we do not perceive the move to be consideration for the promise of a job inasmuch as the move had to be made in order to take advantage of the offer. This, we do not believe, is consideration for the promise itself. *Cf. Ohio Table Pad Co. of Indiana, Inc. v. Hogan,* (1981) Ind.App., 424 N.E.2d 144 (moving expenses not consideration to support permanent employment contract). Thus, in both instances the Ebys have failed to establish the elements of a contract. There was neither an implied nor an express agreement to repay, and the promise of employment is not enforceable for want of consideration even if such a term were included in it. Thus, the Ebys have no breach of contract action. *See The Herald Telephone v. Fatouros,* (1982) Ind.App., 431 N.E.2d 171 (legally binding contract requires offer, acceptance, consideration). Summary judgment was proper as a matter of law on this theory.

*Promissory Estoppel*

■ Although they cannot recover on a breach of contract action, the Ebys could possibly recover on the different equitable contractual claim of promissory estoppel wherein a substitute for the missing consideration is supplied. Promissory estoppel is appropriate in actions such as these where a party takes certain steps to his detriment in order to avail himself of promised employment. *Pepsi-Cola General Bottlers, Inc. v.*

*Woods,* (1982) Ind.App., 440 N.E.2d 696. The question here is whether the Ebys' actions fit within the actionable parameters of this estoppel doctrine.

Indiana courts have adopted the following doctrine of promissory estoppel:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promise and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise."

*Lyon Metal Products, Inc. v. Hagerman Construction Corp.,* (1979) Ind.App., 391 N.E.2d 1152, 1154; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 90 (1981). Dissecting this theory into its basic elements, the question becomes (1) whether Borg-Warner made a definite promise of employment to the Ebys which promise alone induced them to move to Florida in reliance thereon; (2) whether this move to Florida was a substantial change; (3) whether Borg-Warner reasonably expected (or should have expected) the Ebys would take such action; and (4) whether injustice can only be avoided by reimbursing the Ebys.[2] *See Gill v. United States Rubber Co.,* (N.D.Ind.1961) 195 F.Supp. 837; *Lyon Metal Products, supra.* The first three considerations are questions of fact to which the fourth, the equitable decision, is applied. *See Gill v. United States Rubber Co., supra.* Clearly, the Ebys have presented the three factual elements of the action when one takes as true the facts they have brought forth as nonmovants to the summary judgment motion. Hence, we must reverse judgment for Borg-Warner because genuine issues of fact material to this cause of action exist, precluding granting its motion for summary judgment. *See* Ind.Rules of

2. The fourth element is typically framed in terms of enforcing the promise made rather than awarding damages. *See, e.g., Gill v. United States Rubber Co.,* (N.D.Ind.1961) 195 F.Supp. 837; *Lyon Metal Products, Inc. v. Hagerman Construction Corp.,* (1979) Ind.App., 391 N.E.2d 1152. However, promises of employment are not usually enforced because of the

adequacy of the legal remedy. *See State ex rel. Cleary v. Board of School Commissioners,* (1982) Ind.App., 438 N.E.2d 12; *Smith v. General Motors Corp.,* (1957) 128 Ind.App. 310, 143 N.E.2d 441. Thus, we have modified the last element of promissory estoppel to conform to the situation here.

Procedure, Trial Rule 56; *Bond v. Peabody Coal Co.,* 450 N.E.2d 542.

*Actual Fraud*

■■ Summary judgment was properly rendered on this theory because actual fraud cannot be founded on promises of future performance. Such fraud contemplates only misrepresentations of past or existing facts. *Rempa v. LaPorte Production Credit Association,* (1983) Ind.App., 444 N.E.2d 308; *Tutwiler v. Snodgrass,* (1981) Ind.App., 428 N.E.2d 1291. The Ebys have no case under the auspices of actual fraud.

*Constructive Fraud*

■ Likewise, the Ebys have no cause of action for constructive fraud. This genre of fraud can be based on promissory misrepresentations. *Blaising v. Mills,* (1978) 176 Ind.App. 141, 374 N.E.2d 1166. However, a strange quirk in Indiana law prevents recovery thereunder.

■ Constructive fraud consists of most of the same elements as actual fraud: material representation of past or existing facts (constructive fraud includes promissory facts, too), which representations are false and cause a reliance upon such representation to the detriment of the one so relying. · *Id.* The major distinction between the two types of fraud is that actual fraud is intentional or reckless deception whereas constructive fraud provides a remedy on more equitable grounds by refusing to sanction behavior which procures an unconscionable advantage to one party over another regardless of the intent. *Brown v. Brown,* (1956) 235 Ind. 563, 135 N.E.2d 614; *Lawshe v. Glen Park Lumber Co.* (1978) 176 Ind.App. 344, 375 N.E.2d 275. This distinction of course, not only eliminates the element of intentional behavior from actual fraud but adds another element: in addition to finding a detriment to the promisee, we must also find *an advantage to the promisor. Brown v. Brown, supra; Lawshe v. Glen Park Lumber Co., supra; but see Kokomo Veterans, Inc. v. Schick,* (1982) Ind. App., 439 N.E.2d 639. The Ebys have neither alleged nor presented evidence of any

advantage Borg-Warner gained by reason of its representations. Thus summary judgment was proper in this instance also.

*Negligent Misrepresentation*

Because of the holes created in the Indiana common law of intentional and unintentional misrepresentation, our courts have come under a certain amount of critical analysis for treating the tort solely in terms of fraud, with no provision for negligence. Note, *Misrepresentation in Indiana: What Hath Fraud Wrought?* 53 IND.L.J. 559 (1978). However, our courts have recently begun shaping a limited exception to this failure to acknowledge such negligence actions in this state and have established a narrow field of liability under certain circumstances.

■ The primary elements of the tort of negligent misrepresentation are found in RESTATEMENT (SECOND) OF TORTS § 552 (1977), which limits responsibility to the following:

"(1) *One who, in the course of his* business, profession, or *employment,* or in any other transaction in which he has a pecuniary interest, *supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss* caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is

created, in any of the transactions in which it is intended to protect them." (Emphasis added.) In adapting this theory to Indiana's law of negligence, this court has only had occasion to apply the theory to professionals whose actual calling requires the giving of opinions. *See, e.g., Essex v. Ryan,* (1983) Ind.App., 446 N.E.2d 368 and cases cited therein. Such professions include brokers, attorneys, abstractors, and surveyors, one of whose primary functions is to render actionable professional opinions. This, of course, raises questions of distinguishing between actual misrepresentations and general professional negligence (malpractice), explaining our courts' hesitancy to embrace a doctrine which could provide remedies where fraud fails but could greatly confuse the issues relating to professional conduct. This issue is not present in the action here. The Ebys allege certain Borg-Warner employees made representations to Larry in the course of their employment concerning work opportunities. The case here is simply whether an employer, through its agents, breached a duty to the Ebys by making false representations upon which the Ebys relied to their detriment. The specter of confusing professional opinions (malpractice) with simple misrepresentations made in the course of one's professional activities is not so apparent here. The entanglement of these two discrete problems accounts for hesitation in recognizing the negligent misrepresentation theory of recovery. For this reason, we do not perceive our conclusion here to be in conflict with this district's opinion in *Wilson v. Palmer,* (1983) Ind.App., 452 N.E.2d 426, where we stated Indiana does not recognize the tort of negligent misrepresentation, citing *Essex v. Ryan.* In *Wilson v. Palmer,* the plaintiff purchaser of a house sought damages against a title company, alleging

the company's title report failed to indicate an existing demolition order on the house, thereby concealing from the plaintiff the fact that the house had been condemned and demolition ordered. We held dismissal for failure to state a claim was inappropriate as the allegations were broad enough to permit the plaintiff to establish the title company failed to perform services under a contract in a workmanlike manner which might constitute a breach of contract and negligence. Having concluded in that case that negligence was an entirely appropriate action, we now feel extraneous comments regarding negligent misrepresentation as a specific form of negligence were of no matter.[3] Our case here clearly falls within the less shadowy realm of this heretofore neglected tort and provides recovery under a negligence theory, with its special advantages and disadvantages not available under fraud, or intentional tort, actions. *See* Note, 53 IND.L.J. 559, *supra.* Having recognized the tort for this particular action, it remains to determine whether the Ebys can overcome a summary judgment with their case as presented. We believe they have.

■ One of the major questions in negligence cases is naturally the duty to be attributed to the party making the representations and to whom that duty extends. In this case, there is the clear-cut principle that it is an employer's duty to protect its employee against the employer's own negligence. *See Cleveland, Cincinnati, Chicago & St. Louis Railway Co. v. Gossett,* (1909) 172 Ind. 525, 87 N.E. 723; *Conway v. Park,* (1941) 108 Ind.App. 562, 31 N.E.2d 79. Although typically used in reference to physical injuries incurred in such master-servant relationships, we find no reason not to apply the general principle to economic injury as occurred here. Thus, having found a duty, we add the facts alleged by the Ebys

3. The case of *English Coal Co. v. Durcholz,* (1981) Ind.App., 422 N.E.2d 302, *trans. denied,* was cited in both *Wilson* and *Essex* as authority for the proposition that Indiana does not recognize the tort of negligent misrepresentation. In that case, the defendant had counterclaimed for damages for negligent misrepresentation and appealed the trial court's failure to deliver the appropriate instruction. However,

the defendant conceded to what it believed to be the state of the law in Indiana, that negligent misrepresentation was not recognized. As a result, this court declined further pursuit of the subject, thus distinguishing it from the contrary result reached in *Essex* where the topic was vigorously and authoritatively presented.

and find they could constitute a breach thereof in conformance with the tort of negligent misrepresentation. Because these facts are in dispute, summary judgment was inappropriate. *See* T.R. 56; *Bond v. Peabody Coal Co.,* 450 N.E.2d 542.

If the parties indeed decide to litigate this particular theory, they must keep in mind that Rhonda, Larry's wife, is suing for her own damages. This court has not adopted the entire Restatement position on negligent misrepresentation which extends recovery to foreseeable plaintiffs. Rather, recovery in this case will be limited only to those parties who Borg-Warner had actual knowledge would be affected. *See Essex v. Ryan, supra.* Other than this caveat, the Ebys are free to pursue recovery sounding in negligence.

This judgment must be reversed.

CONOVER, P.J., and YOUNG, J., concur.