**WESTERN SMELTING & METALS, INC., Plaintiff,**

v.

**SLATER STEEL, INC.; Joslyn Manufacturing and Supply Co.; and Joseph Behr & Sons, Inc., Defendants.**

**Civ. No. F 85–364.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Nov. 12, 1985.

Verne W. Newcomb and Richard Pope, Newcomb, Sabin, Schwartz & Landsverk, Portland, Or., William L. Sweet, Jr., Barrett, Barrett & McNagny, Fort Wayne, Ind., for plaintiff.

Carl R. Neil and William C. Campbell, Lindsay, Hart, Neil & Weigler, Portland, Or., Richard Blaich and Martin T. Fletcher, Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, Ind., for defendant Slater.

R.G. Stephenson and Mary Danford, Bullivant, Houser, Bailey, Hanna, Pendergrass, Hoffman, O'Connell & Goyak, Portland, Or., Kenneth M. Waterman, Shoaff, Parker & Keegan, Fort Wayne, Ind., for defendant Joslyn.

E. Richard Bodyfelt, Bodyfelt, Mount, Stroup & Chamberlain, Portland, Or., David K. Schmitt, Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., Edward E. Back, Shambaugh, Kast, Beck & Williams, Fort Wayne, Ind., for defendant Joseph Behr & Sons.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on the motion for partial summary judgment filed by defendant Slater Steel, Inc. ("Slater"). Plaintiff ("Western") has filed a memorandum in opposition, and Slater filed a reply. For the following reasons, the motion for partial summary judgment will be granted in part and denied in part.

This action arises out of a contract entered into by Western, Slater and defendant Joslyn Manufacturing and Supply Company ("Joslyn") under which Western would undertake to sell scrap metal to Slater and Joslyn. Defendant Joseph Behr & Sons, Inc. ("Behr") acted as broker for the sales. In its amended complaint, Western alleges that Slater and Joslyn breached their contract, converted scrap metal that Western had sent to them, and that Slater, Joslyn and Behr engaged in acts of misrepresentation. The complaint seeks $300,000.00 on the contract and misrepresentation claims, treble damages of $900,000.00 on the conversion claim, prejudgment interest, attorney fees and exemplary damages. Slater's motion for partial summary judgment is directed solely at the request for exemplary damages.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the facts is necessary." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975).

In making this determination, the court must keep in mind that the entry of summary judgment terminates the litigation, or an aspect thereof, and must draw all inferences from the established or asserted facts in favor of the non-moving party. *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985). The non-moving party's reasonable allegations are to be accepted as true for purposes of summary judgment. *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1218–19 (7th Cir.1984). A party may not rest on the mere allegations of the pleadings or the bare contention that an issue of fact exists. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See also Atchison, Topeka & Santa Fe Railway Co. v. United*

*Transportation Union,* 734 F.2d 317 (7th Cir.1984); *Korf v. Ball State University,* 726 F.2d 1222 (7th Cir.1983). *See generally* C. Wright, *Law of Federal Courts,* § 99 (4th ed. 1983); 6 *Moore's Federal Practice,* § 56.15 (2d ed. 1984).

Thus, the moving party must demonstrate the absence of a genuine issue of material fact. The court views all evidence submitted in favor of the non-moving party. Even if there are some disputed facts, where the undisputed facts are the material facts involved and those facts show one party is entitled to judgment as a matter of law, summary judgment is appropriate. *Egger v. Phillips,* 710 F.2d 292, 296–97 (7th Cir.1983); *Collins v. American Optometric Assn.,* 693 F.2d 636, 639 (7th Cir.1982). *See also Bishop v. Wood,* 426 U.S. 341, 348, 348 n. 11, 96 S.Ct. 2074, 2079, 2079 n. 11, 48 L.Ed.2d 684 (1976).

In light of these principles, the facts relevant to this motion are as follows. Western is an Oregon corporation with its principal place of business in Oregon. It is engaged in the collection and sale of scrap metal, primarily high-nickel alloys. Joslyn, an Illinois corporation, owned a plant in Fort Wayne, Indiana until February, 1981, when it sold the plant to Slater. Slater, a Delaware corporation with its principal place of business in Fort Wayne, is a manufacturer of stainless steel, and needs high-nickel alloy scrap as raw material for its steel. Behr is an Illinois corporation which acted as a broker for Joslyn and Slater, soliciting scrap suppliers, arranging for shipment to Fort Wayne, and receiving a commission on the payment made by Joslyn or Slater to the scrap supplier.

Between September 1, 1980 and September 30, 1983, Western shipped to Joslyn and Slater a total of thirty-six loads of high-nickel scrap with varying metal contents. According to Western, the contract required Joslyn and Slater to melt and perform a meltdown analysis of all scrap metal in each shipment, and then to report to Western and pay for all nickel, chrome and molybdenum units recoverable from the scrap. The breach of contract claim asserts that Joslyn and Slater in effect shortchanged Western by underreporting the amount of alloy in the shipments, and the conversion count is based on the claim that the amounts not reported to Western were converted to Joslyn's and Slater's own use. The misrepresentation count is premised both on Slater and Joslyn's underreporting and on certain representations made by Behr.

This lawsuit was originally filed in the District of Oregon, but was transferred to this court on August 14, 1985 after Magistrate William M. Dale found that the court did not have jurisdiction over Slater and recommended granting of Slater's motion to transfer the cause in order to cure the jurisdictional defect. *See* Findings and Recommendations of Magistrate Dale, p. 9 n. 3 (Docket # 60).

Slater's motion for partial summary judgment is based upon its belief that Indiana law prohibits the assessment of punitive damages in this action under the rule of *Taber v. Hutson,* 5 Ind. 322 (1854). Western's opposition to the motion is based on its conclusion that Oregon, and not Indiana, law applies to the question of the availability of punitive damages, and that Indiana statutory law has in effect overridden the *Taber* rule. Slater admits that if Oregon law applies, punitive damages are available. The court must therefore determine whether Indiana or Oregon law applies, and if Indiana law applies, whether the rule of *Taber v. Hutson* will apply to this case.

■■■■ In resolving a conflict of laws question, a federal court sitting in diversity will generally apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The situation becomes more complicated when the federal court deciding the question has had the case transferred to it from another federal court. If a case is transferred under 28 U.S.C. § 1404(a) for the sake of convenience, then the transferee court should apply the law of the transferor forum. *Van Dusen v. Barrack,* 376 U.S.

612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Nelson v. International Paint Co.*, 716 F.2d 640, 643 (9th Cir.1983). The rationale behind this rule is to prevent the party seeking a transfer to take advantage of more favorable laws in another forum. *Van Dusen.* However, when a case is transferred to cure a lack of jurisdiction, the law of the transferee forum must apply, in order to prevent plaintiffs from enjoying choice-of-law advances to which they would not have been entitled in the proper forum. *Tillett v. J.I. Case Co.*, 756 F.2d 591, 593 n. 1 (7th Cir.1985); *Gonzalez v. Volvo of America Corp.*, 734 F.2d 1221, 1223 (7th Cir.1984); *Nelson*, 716 F.2d at 643; *Roofing and Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 992 (11th Cir.1982); *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1110 (5th Cir.1981); *Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 165 (3d Cir.1980), *rev'd on other grounds*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Martin v. Stokes*, 623 F.2d 469, 475 (6th Cir.1980). This conclusion is buttressed by the language of 28 U.S.C. § 1631, which provides that if a case is transferred because of a want of jurisdiction, the action "shall proceed as if it had been filed in ... the court to which it is transferred...." Therefore, the court must apply Indiana choice-of-law rules.

■ The Indiana choice-of-law rule for contract actions is the "most intimate contacts" approach, described by the Indiana Supreme Court as follows:

> The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact.

*W.H. Barber Co. v. Hughes*, 223 Ind. 570, 63 N.E.2d 417, 423 (1945). *See Eby v. York Division, Borg Warner*, 455 N.E.2d 623,

626 (Ind.App.1983); *Suyemasa v. Myers*, 420 N.E.2d 1334 (Ind.App.1981). Based upon the *Restatement (Second) of Conflict of Laws*, § 188 (1971), the *Eby* court listed the following contacts as representative of the contacts a court should consider:

(a) the place of contracting;

(b) the place of negotiation of the contract;

(c) the place of performance;

(d) the location of the subject matter of the contract; and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

455 N.E.2d at 626. An examination of the facts of this case indicate that, while the question is close, the state with the most significant contacts is Indiana. Because Behr was brokering transactions between Western and the Fort Wayne plant, the place of negotiation and contracting is somewhat nebulous. However, it is clear that the place of performance was the Fort Wayne plant. That was the place where the scrap was sent, where it was melted and analyzed, and where the contractual provisions concerning the determination of alloy content were to be performed. The breach alleged here was a breach of those particular provisions. Therefore, to the extent that Western seeks exemplary damages for the breach of contract,[1] the availability of those damages will be governed by Indiana law.

■ The Indiana choice-of-law rule for torts is the rule of *lex loci delicti*—that is, the law of the place where the tort was committed. *Bishop v. Firestone Tire & Rubber Co.*, 579 F.Supp. 397, 398 (N.D.Ind. 1983); *Eaton Corp. v. Appliance Valves Corp.*, 526 F.Supp. 1172, 1177–78 (N.D.Ind. 1981); *Eby*, 455 N.E.2d at 626; *Lee v. Lincoln Natl. Bank & Trust Co.*, 442

---

1. It is not completely clear whether Western seeks exemplary damages on some or all of its claims. According to the amended complaint, Western's request for exemplary damages is stated only as to the misrepresentation claim.

However, the briefs on the motion for summary judgment have not been directed solely at the misrepresentation issue. Therefore, the court will consider the question as to all three claims.

N.E.2d 1147 (Ind.App.1982).[2] Under this rule, the place where the tort was committed (the place of wrong) is "the state where the last event necessary to make an actor liable for an alleged tort takes place." *Restatement of Conflicts of Laws*, § 377 (1934). *See Eby*, 455 N.E.2d at 626. For the tort of conversion, the last act necessary to make the defendants liable is the misappropriation of the property itself, *see Eaton Corp.*, 526 F.Supp. at 1178, and in this case that misappropriation occurred at the Fort Wayne plant, when Joslyn or Slater decided to underreport the amount of alloy present in the scrap and to keep the unreported alloy for itself. Thus, the law of Indiana would apply to the question of the availability of exemplary damages on the conversion claim.

The misrepresentation claim presents a more difficult question: where does the last act necessary to make Slater, Joslyn, or Behr liable for misrepresentation occur? Slater argues that it is Indiana, because that is where the misrepresentations were made, and the damage to Western was complete once those misrepresentations occurred. Western argues (citing Oregon law) that the last act is the loss it suffered in Oregon, to which Slater replies that the loss occurred in the place and at the time of the misrepresentations.

Indiana case law indicates that "in claims for fraud and misrepresentation, the tort is considered to have been committed in the state where the loss occurred, typically because that is where the last event necessary to create liability takes place." *Eby*, 455 N.E.2d at 626. However, a loss does not occur at the place where the mis-representations are made, as Slater contends. The first *Restatement of Conflicts*, which is premised on the *lex loci delicti* rule, specifically makes a distinction in the note following § 377. That note provides in pertinent part:

> *When a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent misrepresentations are made.*

> *Illustrations:*

> 5. A, in state X, makes false representations by letter to B in Y as a result of which B sends certain chattels from Y to A, in X. A keeps the chattels. The place of wrong is in state Y where B parted with the chattels.

> 6. A, in state X, owns shares in the M company. B, in state Y, fraudulently persuades A not to sell the shares. The value of the shares falls. The place of wrong is X.

*Restatement of Conflict of Laws*, § 377 note (emphasis in original). From these illustrations, the court concludes that the place of loss is the place where the plaintiff suffers his damage. In illustration 6, A's economic loss is in state X, even though the misrepresentations are made in another state and regardless of the location of the company. Illustration 5 is similar to this case, especially if one considers that Western kept sending shipments to Fort Wayne because of the misrepresentations made by the defendants. Therefore, because the economic impact of the misrepresentations is suffered by Western in Oregon (as that is where Western cashes the checks from the defendants and is thereby deprived of the

---

**2.** In 1965, the Seventh Circuit held that the choice-of-law rule for torts was the most significant contacts rule. *Watts v. Pioneer Corn Co.*, 342 F.2d 617 (7th Cir.1965); *Gianni v. Fort Wayne Air Service, Inc.*, 342 F.2d 621 (7th Cir. 1965). With the exception of *Witherspoon v. Salm*, 142 Ind.App. 655, 237 N.E.2d 116 (1968), *rev'd on other grounds*, 251 Ind. 575, 243 N.E.2d 876 (1969), the Indiana Court of Appeals has unanimously held that the rule is *lex loci delicti. Eby; Lee; Maroon v. State Dept. of Mental Health*, 411 N.E.2d 404 (Ind.App.1980). Thus, the subsequent validity of *Watts* is questionable. *See Sharp v. Egler and Bill Hanka Auto Sales,* *Inc.*, 658 F.2d 480 (7th Cir.1981); *Eaton Corp.*, 526 F.Supp. at 1178. Because this court must give consideration to the rulings of the state intermediate appellate courts on questions of state law, *In re Air Crash Disaster Near Chicago, Illinois*, 701 F.2d 1189, 1197 (7th Cir.1983); *Garris v. Schwartz*, 551 F.2d 156, 158 (7th Cir.1977), the unanimous application of *lex loci delicti* convinces the court that this is the proper choice of law rule to apply to the conversion and misrepresentation claims. The court notes in passing, however, that its conclusion under the most significant contacts rule would be the same as set forth in the remainder of this order.

**584**

money that is not paid because of the underreporting of the alloys), Oregon law would apply.

■ This conclusion is buttressed by case law. In *Eby*, the plaintiff was an Indiana resident who was allegedly promised a job in Florida. The misrepresentations about the existence of the Florida job were made by a Florida employee from the Florida office of the defendant. However, in applying the Indiana rule of "place of loss," the court stated that "in the case here, the majority of the Ebys' losses—wages, moving expenses—happened in Indiana. Therefore, the Ebys' entire case is governed by Indiana law." 455 N.E.2d at 626. Thus the place of loss is the place where the plaintiff suffered his damages, not where the misrepresentations were made. *See also Pat J. Murphy, Inc. v. Drummond Dolomite, Inc.*, 214 F.Supp. 496, 498 (E.D.Wis.1963), *adopted and affirmed*, 346 F.2d 382 (7th Cir.1965) (applying Wisconsin law under *lex loci delicti*). Therefore, Oregon law governs the existence of exemplary damages on the misrepresentation claim. Because Slater admitted that Oregon law allows for punitive or exemplary damages for misrepresentation, the motion for summary judgment must be denied as to the misrepresentation claim.

Under Indiana law, the general rule is that punitive damages are not recoverable in a contract action. However, there are exceptions to this rule. "Where the conduct of a party, in breaching his contract, independently establishes the elements of a common law tort, punitive damages may be awarded for the tort." *Art Hill Ford, Inc. v. Callender*, 423 N.E.2d 601, 602 (Ind. 1981); *F.D. Borkholder Co., Inc. v. Sandock*, 274 Ind. 612, 413 N.E.2d 567 (1980); *Hibschman Pontiac v. Batchelor*, 266 Ind. 310, 362 N.E.2d 845 (1977). Even if an independent tort cannot be established, punitive or exemplary damages may be awarded if elements of fraud, malice, gross negligence or oppression mingle in the controversy, and it can be shown that the public interest would be served by the deterrent effect of punitive damages. *Canada Dry Corp. v. Nehi Beverage Co., Inc.*,

723 F.2d 512, 524 (7th Cir.1983); *Art Hill Ford*, 423 N.E.2d at 602. Because Western has alleged tortious conduct in addition to the breach of contract, this court cannot say as a matter of law that Western would be unable to establish these elements so as to justify an award of punitive damages.

However, Slater argues that the rule of *Taber v. Hutson*, 5 Ind. 322 (1854), operates to prevent Western's claim for exemplary damages. Under the *Taber* rule, punitive damages are not appropriate in a civil case when the defendant is or may be subject to criminal prosecution for the same act. *See Husted v. McCloud*, 450 N.E.2d 491, 493 (Ind.1983); *Gomez v. Adams*, 462 N.E.2d 212, 227 (Ind.App.1984); *Moore v. Waitt*, 157 Ind.App. 1, 298 N.E.2d 456, 461 (Ind.App.1973). The mere possibility of a criminal prosecution is sufficient to invoke the rule. *Moore*, 298 N.E.2d at 460. Although Indiana courts at one time held that corporations were explicitly excluded from this rule because of the inability of a corporation to be held criminally responsible for the crimes of its agents, *see Peoples Trust & Savings Bank v. Humphrey*, 451 N.E.2d 1104, 1114 (Ind.App.1983); *Nicholson's Mobile Home Sales, Inc. v. Schramm*, 164 Ind.App. 598, 330 N.E.2d 785 (1975), this exception has been abrogated by I.C. 35–41–2–3, which provides that a corporation "may be prosecuted for any offense," and can be "convicted of an offense ... if it is proved that the offense was committed by its agent acting within the scope of his authority." *See Gomez*, 462 N.E.2d at 227 and n. 11 (explicitly pointing out that *Peoples Trust & Savings Bank* was in error). Because Slater could possibly be prosecuted under the criminal fraud statute, I.C. 35–43–5–4, or the criminal theft statute, I.C. 35–43–4–1, the rule of *Taber v. Hutson* would appear to apply and prevent Western from being able to recover punitive or exemplary damages on the contract and conversion claims.

■ Western claims that the *Taber* rule was overruled by I.C. 34–4–30–2, which be-

came effective on September 1, 1984 and provides in pertinent part:

It is not a defense to an action for punitive damages that the defendant is subject to criminal prosecution for the act or omission that gave rise to the civil action.

Because the acts complained of in this cause all occurred from September 1, 1980 to September 30, 1983, Western in effect seeks to have this court apply I.C. 34–4–30–2 retroactively.

The general rule under Indiana law is that a statute will not be given a retroactive application unless the legislature unequivocally states a contrary intent. *Tremps v. Ascot Oil Co.*, 561 F.2d 41, 45 (7th Cir.1977); *Herrick v. Sayler*, 245 F.2d 171, 174 (7th Cir.1957); *State ex rel. Uzelac v. Lake Criminal Court*, 247 Ind. 87, 212 N.E.2d 21 (1965); *Davis v. State*, 464 N.E.2d 926, 928 (Ind.App.1984). An exception to this general rule exists for remedial statutes which do not create new rights or take existing rights away. *See Herrick*, 245 F.2d at 174; *Connecticut Mut. Life Ins. Co. v. Talbot*, 113 Ind. 373, 14 N.E. 586 (1887); *DeHart v. Anderson*, 178 Ind.App. 581, 383 N.E.2d 431, 435 (1978). However, I.C. 34–4–30–2 cannot be said to be merely remedial. It creates a new right for civil plaintiffs: the right to seek punitive damages for acts that previously could not generate punitive damages because of their potential criminal implications. The Seventh Circuit's *Herrick* decision makes clear that a statute which increases a defendant's liability cannot be applied retroactively. 245 F.2d at 174. Because there is no evidence of any legislative intent to have I.C. 34–4–30–2 apply retroactively, the general rule requires that it be applied prospectively.

Western argues that this court should overrule *Taber*. However, at least two Indiana courts left the question to the legislature, *see McCarty v. Sparks*, 180 Ind.App. 251, 388 N.E.2d 296 (1979), and *Glissman v. Rutt*, 175 Ind.App. 493, 372 N.E.2d 1188 (Ind.App.1978), and the legislature responded by passing I.C. 34–4–30–2 in 1984. Given the fact that the Indiana Supreme Court

appeared to follow the *Taber* rule as late as 1983 in *Husted v. McCloud*, it is clear that prior to the 1984 legislation the courts of Indiana preferred to follow the *Taber* rule. In light of such precedent, the court declines to ignore the *Taber* holding in this case.

Thus, Indiana law prohibits Western from receiving punitive or exemplary damages for the breach of contract and conversion claims, while Oregon law allows Western to seek those damages on the misrepresentation claim.

For the reasons set forth above, defendant Slater's motion for summary judgment is hereby GRANTED as to the breach of contract and conversion claims, and is hereby DENIED as to the misrepresentation claims.