BANK OF LINN GROVE *v.* STULTS, RECEIVER, ET AL.

[No. 13,998. Filed June 18, 1931. Rehearing denied October 1, 1931.]

130

*William H. Eichhorn, Frank W. Gordon* and *John H. Edris,* for appellant.

*Abram Simmons* and *V. M. Simmons,* for appellees.

KIME, J.—After a *per curiam* opinion, this case is again before us for a written opinion.

The Wells County Bank suspended on February 11, 1929, and the appellee Morris E. Stults was thereafter appointed receiver. The appellant, Bank of Linn Grove, was, on February 11, 1929, indebted to the Wells County Bank on two promissory notes of $6,000 each.

The appellant filed its petition in the receivership to have certain indebtedness it claimed to hold against the Wells County Bank set off against the amount due from it to that bank.

The alleged indebtedness of the Wells County Bank to the appellant was based upon certain certificates of de-

posit which had been issued by the bank to appellee
Thomas J. McKean and which were by him assigned to
the appellant before the closing of the bank; the bal-
ance in a checking account which the appellant carried
in the Wells County Bank, and also an amount claimed
to be due on a contract made between the Wells County
Bank and appellee McKean guaranteeing the payment
of and for the repurchase by it of certain notes and
mortgages which it had sold to appellee McKean, but
had never delivered to him, and for which he held the
bank's receipts showing the mortgages purchased and
the amounts paid for them. These receipts and appellee
McKean's rights under the contract of guaranty and
for repurchase had also been assigned to the appellant
before the Wells County Bank closed.

The appellant's petition was in one paragraph, ad-
mitting an indebtedness due from it to the Wells County
Bank and alleging certain indebtedness due from that
bank to the appellant, the greater part of which con-
sisted of claims assigned to appellant by appellee Mc-
Kean.

The appellee receiver answered the petition in five
paragraphs. The first answer was general denial; the
second was payment and settlement; the third was a
partial answer to that part of the petition which sought
to recover upon the contract of the Wells County Bank
guaranteeing payment of and to repurchase the notes
and mortgages, and alleging that it was without con-
sideration; the fourth paragraph was a partial answer
pleading the statute of frauds against the contract guar-
anteeing payment of the notes and mortgages; and the
fifth paragraph of answer was a general answer of no
consideration. The appellant replied in general denial
to each of the second, third, fourth and fifth paragraphs
of answer.

Appellee McKean answered the petition in one para-

graph, admitting the allegations of the petition and disclaiming any interest in the recovery to be had.

The appellee receiver also filed a cross-complaint against the appellant in two paragraphs. Each paragraph was based upon one of the $6,000 promissory notes mentioned in appellant's petition, and against which it sought the set-off. The appellant answered in general denial to each paragraph of the cross-complaint.

The issues were tried by the court which found that on February 11, 1929, when the Wells County Bank suspended, the petitioner owed it $12,111.58; that the petitioner (appellant) was entitled to recover upon the items of set-off based upon the certificates of deposit and upon the balance of its checking account in the total sum of $2,268.37, and ordered that amount set off against the indebtedness due from appellant to the receiver, as of February 11, 1929; and held that appellant was not entitled to recover upon the contract between the Wells County Bank and McKean guaranteeing payment of and for the repurchase of the notes and mortgages which had been sold him and which contract he had assigned to appellant.

Judgment was rendered against the appellant and for the appellee receiver, in the sum of $10,435.30. A written motion to modify the judgment was filed by the appellant and was overruled. The appellant also filed its motion for a new trial, which was overruled.

The errors relied upon for a reversal are: (1) The court erred in overruling appellant's motion for a new trial; (2) the court erred in overruling appellant's motion to modify the judgment.

The reasons relied upon in the motion for a new trial are: (1) The decision of the court is not sustained by sufficient evidence; (2) the decision of the court is contrary to law; (3) the assessment of the amount of recovery against the plaintiff (appellant) is erroneous,

being too large; (4) the assessment of the amount of plaintiff's (appellant's) recovery against the defendant receiver, allowed as a set-off, is erroneous, being too small.

Appellant was denied a recovery upon the third class of claims, which, on February 11, 1929, amounted to $8,985.44. Appellant's right to recover on this class is the only question to be decided on this appeal.

The undisputed evidence shows that, on April 29, 1927, and again, on January 23, 1928, appellee McKean purchased from the Wells County Bank certain notes and mortgages which had been executed to it. These notes and mortgages were not indorsed by the bank and were not delivered to him. They were retained by the bank and a receipt acknowledging the amount paid and specifying the mortgages sold was delivered to the purchaser as the evidence of his ownership. The bank was to collect the interest and look after the mortgages and was to retain 1 per cent of the interest provided for. The notes and mortgages were not exhibited to the purchaser; he did not investigate the titles nor the value of the security. He was assured that they were good, that the bank was *"back of them,"* and it was agreed that he should be paid the face of the mortgage and accrued interest at any time on surrender of the receipt. Purchaser understood that the bank was guaranteeing said notes, and the bank agreed to repurchase them from McKean at any time he desired it to do so. When the bank was rechartered in June, 1928, Wells County Bank assumed all the obligations and liabilities of The Wells County Bank. It thereafter carried out the agreement as to caring for the notes and mortgages and collecting the interest, and retained that portion of the interest agreed upon until it suspended on February 11, 1929.

On February 8, 1929, appellee McKean indorsed and

delivered each. of the receipts held by him to the appellant, and thereafter claimed no title or interest in them or in the notes or mortgages which they represented.

It is possible for this court to arrive at but one conclusion from the following facts. The Wells County Bank agreed that, if the makers of these notes defaulted, the bank would pay, and it further agreed to, pay to McKean any amount which the makers of the various notes failed to pay. It was McKean's "understanding that at any time on demand that they would buy them back and return me cash and that the *bank was back of these* or I would not accept them, and he (the cashier) told me that they would accept them at any time and pay interest up to date any time that I wished to cash them and the *bank was back of these receipts.* He (the cashier) said he could pay me from five to six percent on *those mortgages.* I told him that surely was good enough if the *bank was back of them. He said it was.* He said they [the bank] was getting seven percent, but. the bank being *back of it* and taking care of the taxes, etc., he could only pay me five or six. I purchased *receipts on certain notes* but never saw the notes. I asked him for receipts on notes that the *bank was back of."* George Schlagenhauf, a maker of one of the mortgages, paid off his note in full and McKean was at once given credit for a deposit of the amount. All the receipts read as follows: "Received of T. J. McKean ———— (amount) for ———— (name of mortgagee) ———— payable ———— (date). The Wells County Bank." The instruments were payable out of a specific fund. One was actually paid out of the specific fund. Then the bank went further and agreed to pay whether the makers paid or not. The liability assumed by the bank was collateral. The contract was in legal effect a guaranty that the makers of

the notes would pay the interest and, at maturity, the principal. This is clearly within the Statute of Frauds for it is a promise to answer for the debts and defaults of others. "The verbal contract of guaranty is within the statute of frauds. . . . If part of such a contract rests in parol, the entire contract is regarded as a verbal one." *McCurdy* v. *Bowes* (1883), 88 Ind. 583; *Hassinger* v. *Newman* (1882), 83 Ind. 124, 43 Am. Rep. 64. "The general rule is that the new promise must put an end to the original debt, and extinguish it, or otherwise the new promise will be regarded as collateral, and within the statute." *Lowe* v. *Turpie* (1896), 147 Ind. 652, at p. 683, 44 N. E. 25, 47 N. E. 150, 37 L. R. A. 233.

Appellant's counsel admit in their brief that the terms, conditions, representations and agreements at time of the *sale of the notes and mortgages* by the bank to appellee McKean, *amounted to and constituted a guaranty of their payment at maturity*. What are they guaranteeing? To answer for the debts and defaults of the makers of these notes and mortgages. The above cases amply sustain our holding.

Appellee Stults, the receiver, has filed a verified motion to dismiss in this case, for the reason that this judgment has been paid and that the judgment has been satisfied. The appellant, in a counter verified motion, shows that it was paid under duress and to protect other property, and that the satisfaction of the judgment was entered voluntarily by appellee Stults, receiver, without their knowledge or assent. Payment of a judgment under such circumstances does not preclude the party from appealing. *Hammond, etc., R. Co.* v. *Kaput* (1915), 61 Ind. App. 543, 110 N. E. 109. The motion to dismiss is therefore overruled.

The trial court committed no error, and the judgment is, therefore, affirmed.