**PETRUZZI'S IGA SUPERMARKETS, INC., Plaintiff,**

v.

**DARLING–DELAWARE CO., INC., the Standard Tallow Corp., Moyer Packing Company and Herman Isacs, Inc., Defendants.**

**Civ. No. 86–0386.**

United States District Court, M.D. Pennsylvania.

Sept. 24, 1987.

Warren Rubin, Bernard M. Gross, Jay Sacks Cohen, Philadelphia, Pa., Donald H. Brobst, Richard A. Russo, Rosenn, Jenkins & Greenwald, Larry S. Keiser, Wilkes-Barre, Pa., for Petruzzi's IGA.

Robert Hill Schwartz, New York City, for Herman Isacs, Inc.

David Acker, Winston & Strawn, Chicago, Ill., for Darling-Delaware Co.

Miles H. Shore, Henry S. Ruth, Jr., Barbara Maczynski Beck, Philadelphia, Pa., Ted Wells, Lowenstein & Sadler, Roseland, N.J., for the Standard Tallow Corp.

Philip Salkin, Pearlstine, Salkin, Hardman & Robinson, Lansdale, Pa., for Moyer Packing Co.

### MEMORANDUM AND ORDER

NEALON, Chief Judge.

Presently before the court is a motion by defendant Herman Isacs, Inc. (Isacs) to dismiss the complaint against it in the above-captioned action due to, *inter alia*, lack of personal jurisdiction. For the reasons set forth below, Isacs' motion will be granted, and this defendant will be dismissed from the lawsuit.

### FACTS

Plaintiff Petruzzi's IGA Supermarkets, Inc. (Petruzzi's), a Pennsylvania corporation, commenced this action pursuant to the Sherman and Clayton Antitrust Acts, 15 U.S.C. §§ 1, 15 and 26 on March 14, 1986. Named as defendants were Isacs and three other corporations. All defendants were at relevant times in the business of purchasing certain waste products (*i.e.*, inedible fats) as raw materials for "rendering" or conversion into marketable finished products such as tallow. Isacs is a Connecticut corporation which ceased its rendering operations in August 1985.

Petruzzi's alleges in its complaint that from 1977 through 1985, defendants engaged in a conspiracy to restrain trade in a geographic area covering portions of Pennsylvania, New Jersey and Connecticut. Specifically, Petruzzi's asserts that as a result of defendants' actions, it was forced to sell its waste products to them at a lower price than could have been obtained in the absence of a price-fixing conspiracy. Petruzzi's avers only that it sold waste products to "one or more" of the defendants. *See* document 1 of the record at ¶ 5.

By Order dated May 16, 1986, the court stayed all proceedings in this case pending the outcome of a grand jury investigation conducted by the Antitrust Division of the United States Department of Justice in the Eastern District of Pennsylvania. On the same date, the parties stipulated that upon expiration of the stay, this lawsuit would proceed as a class action, and class status was certified by the court. The grand jury investigation terminated without the return of an indictment, and the stay expired shortly thereafter at the end of 1986.

Isacs moved for dismissal on February 23, 1987 on the grounds that the court lacks personal jurisdiction over it, that service of process was insufficient and that venue in the Middle District of Pennsylvania is improper.[1] The parties submitted numerous briefs addressing the relevant issues, and oral argument was presented to the court on July 9, 1987. Affidavits from John L. Isacs, President of Isacs, were also filed by the moving defendant; no affidavits were submitted by Petruzzi's. Isacs' motion to dismiss is now ripe for disposition.

The factual background specifically pertaining to the issue of personal jurisdiction over Isacs evolved as follows. Attached to the motion to dismiss was an affidavit from John L. Isacs indicating that: Isacs never solicited, purchased or collected fat waste products from any account in Pennsylvania; all of Isacs' raw materials, which were obtained outside of Pennsylvania, were processed into tallow and other finished products at its one rendering plant located in Bridgeport, Connecticut; the purchasers of Isacs' finished products included one Pennsylvania corporation, defendant Moyer Packing Company (Moyer); all sales to Moyer were F.O.B. Bridgeport, Connecticut and were received by Moyer's agents at Isacs' rendering plant in Bridgeport; Isacs never had an office, telephone number or agent in Pennsylvania and was never licensed to do business in this state; Isacs never sent any of its officers or agents to Pennsylvania to meet with officers or agents of the other defendants; and Isacs never transacted any business with Petruzzi's. On the basis of the above information, Isacs argues that it has insufficient contacts with Pennsylvania for this court to exercise jurisdiction over it.

Along with its brief in opposition to the motion to dismiss, Petruzzi's submitted corporate records from Isacs which indicate that: between 1980 and 1984, Isacs sold $670,501 worth of its finished products to Moyer; between 1980 and 1984, Isacs sold $3,289,401 worth of its finished products to another Pennsylvania corporation, the Corenco Corporation (Corenco); and that representatives of Isacs made twenty-eight (28) telephone calls to rendering plants in Pennsylvania between 1981 and 1984. On the basis of this information, Petruzzi's maintains that this court has personal jurisdiction over Isacs because of Isacs' business transactions in Pennsylvania and because this defendant caused harm or tortious injury in the Commonwealth. Petruzzi's also asserts that by entering a general appearance, filing an unopposed motion for extension of time to respond to the complaint, stipulating to class status and producing corporate records, Isacs waived its right to object to personal jurisdiction.

In reply, Isacs submitted another affidavit from John L. Isacs in which he explained that: all of the finished products sold to Corenco were shipped either to its principal place of business in Tewksbury, Massachusetts or to another Corenco facility in Newington, New Hampshire; Isacs'

---

1. In view of the court's determination that it lacks personal jurisdiction over Isacs, the propriety of service of process and venue will not be addressed.

sales to Moyer were solicited by and entered into through a commodities broker from New Jersey; most, if not all, of the finished products picked up by Moyer's trucks at Isacs' Bridgeport, Connecticut plant were either resold and delivered to Moyer's customers outside of Pennsylvania or were shipped to Moyer's milling plant in New Jersey, so that only a small percentage, if any, of Isacs' finished products were ever transported to Moyer's Pennsylvania facilities; none of the telephone calls to Pennsylvania rendering plants were made to solicit, purchase or sell raw materials or finished products. In response, Petruzzi's did not contest the averments of the second affidavit from John L. Isacs, including his assertion that few or no finished products from Isacs were ever delivered to Corenco's Pennsylvania facilities.

## DISCUSSION

### I.

■ When a defendant raises a jurisdictional defense, the plaintiff bears the burden of demonstrating sufficient contacts with the forum state to give the court *in personam* jurisdiction. *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984); *Pharmceutical Group Services, Inc. v. National Pharmacies, Inc.,* 592 F.Supp. 1247, 1248 (E.D.Pa. 1984). At the stage of the proceedings where the factual record consists of only pleadings and affidavits, the plaintiff's burden is satisfied by establishing a prima facie case of jurisdiction. *Pharmaceutical Group Services, Inc., supra,* at 1248 & n. 1; *Kyle v. Continental Capital Corp.,* 575 F.Supp. 616, 618–20 (E.D.Pa.1983). In reviewing a jurisdictional dispute, the pleadings and affidavits are to be considered in the light most favorable to the plaintiff, with any discrepancies in the versions of events resolved in the plaintiff's favor. *Pharmaceutical Group Services, Inc., supra,* at 1248; *Cottrell v. Zisa,* 535 F.Supp. 59, 60 n. * (E.D.Pa.1982).

Rule 4(e) of the Federal Rules of Civil Procedure permits a district court to assert personal jurisdiction over a nonresident to the extent allowed under the law of the state where the district court sits. The Pennsylvania Long Arm Statute, 42 Pa.C.S. A. § 5322, states in relevant part:

(a) General rule.—A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:

(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:

(i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

(iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.

(iv) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any government unit of this Commonwealth.

\*   \*   \*   \*   \*   \*

(2) Contracting to supply services or things in this Commonwealth.

(3) Causing harm or tortious injury by an act or omission in this Commonwealth.

(4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

\*   \*   \*   \*   \*   \*

(b) Exercise of full constitutional power over non-residents.—In addition to the provisions of subsection (a) the jurisdic-

tion of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

Under subsection (b), the reach of the Pennsylvania Long Arm Statute is coextensive with the Due Process Clause of the United States Constitution. *Time Share Vacation Club, supra,* at 63; *Bellante, Clauss, Miller & Partners v. Alireza,* 634 F.Supp. 519, 522 (M.D.Pa.1985) (Nealon, C.J.).

■ A two-step process has been developed by courts in this circuit to determine whether personal jurisdiction may be asserted over a nonresident defendant. *See Dollar Savings Bank v. First Security Bank of Utah,* 746 F.2d 208, 211–14 (3d Cir.1984); *Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539, 541 (3d Cir.1985); and *The Plymouth Yarn Company, Inc. v. Monarch Enterprises, Inc.,* Civil No. 86–1408, slip op. (E.D.Pa. Oct. 28, 1986) [Available on WESTLAW, 1986 WL 12142]. First, a district court must examine whether the cause of action arises from the defendant's forum or non-forum related activities. *Gehling, supra,* at 541. As for the defendant's forum related activities, "the defendant's conduct and connection with the forum State ... [must be] such that he should reasonably anticipate being haled into court there." *Id.* (quoting *World–Wide Volkwagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). Moreover, "it is essential in each case that there be some

act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). Finally, the defendant's contacts must be sufficient to the extent that subjecting it "to jurisdiction in a Pennsylvania forum does not offend *International Shoe's* traditional notions of fair play and substantial justice." *Id.* (quoting *Dollar Savings Bank, supra,* at 213). *See also International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ On the other hand, if the claim arises from the defendant's non-forum related activities, "the plaintiff must demonstrate that in other respects (other than contacts related to the claim itself) the defendant has maintained 'continuous and substantial' forum affiliations." *Gehling, supra,* at 541 (quoting *Reliance Steel Products v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 588 (3d Cir.1982)). To establish personal jurisdiction under 42 Pa. C.S.A. § 5301(a)(2)(iii), it must be shown that the defendant carried on "a continuous and systematic part of its general business within the Commonwealth." [2] *Id.*

■ This court's initial inquiry, then, is whether Petruzzi's cause of action stems from forum related or non-forum related activities by Isacs. Since there is no indication in the record that Isacs ever attempted to solicit, purchase or collect inedible fats in Pennsylvania, there is no reason to believe that Isacs conducted any forum related activity to implement the alleged price-fixing conspiracy for raw materials. The sale by Isacs of finished products possibly

---

**2.** The relevant portions of 42 Pa.C.S.A. § 5301 state:

(a) General rule.—The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:

\*    \*    \*    \*    \*    \*

(2) Corporations.—

(i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.

(ii) Consent, to the extent authorized by the consent.

(iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

destined for the Commonwealth—products manufactured in Connecticut from raw materials obtained outside of Pennsylvania—does not constitute a forum related activity giving rise to Petruzzi's allegations of wrongdoing on the part of Isacs in its methods of purchasing raw materials. Furthermore, Petruzzi's allegations in its complaint that Isacs took action in Pennsylvania to form the conspiracy are wholly unsubstantiated and are squarely contradicted by the affidavits of John L. Isacs. Finally, the court rejects Petruzzi's argument that Isacs caused harm or tortious injury in the forum state. In short, since Isacs never attempted to solicit, purchase or collect inedible fats in Pennsylvania, it stretches the imagination to believe that Isacs harmed sellers of those raw materials in Pennsylvania by virtue of the alleged price-fixing conspiracy. The court must conclude, then, that Petruzzi's cause of action does not arise from Isacs' forum related activities.

Petruzzi's has also failed to demonstrate that Isacs maintained continuous and substantial affiliations with the forum state for "general jurisdiction" purposes.[3] The affidavits of John L. Isacs have established that Isacs' contacts with Pennsylvania were few and insubstantial. In fact, the extent of Isacs' contacts with Pennsylvania appears to be limited to the following: (1) twenty-eight (28) telephone calls of unknown purpose and content and between unidentified individuals to rendering plants in Pennsylvania over a four-year period; and (2) possibly the sale of a small percentage of its finished products which were loaded F.O.B. Bridgeport, Connecticut and were ultimately destined for Moyer's facilities in Pennsylvania.[4] The court concludes that Petruzzi's has failed to meet its burden of demonstrating sufficient contacts between Isacs and the forum state to permit the court to exercise personal jurisdiction over this defendant.

---

**3.** General jurisdiction "exists when the claim does not arise out of or is unrelated to the defendant's contacts with the forum." *Dollar Savings Bank, supra,* at 211.

**4.** Petruzzi's has presented a cogent argument, with supporting authorities, for rejection of the

## II.

▪ Entering a general appearance in federal court does not constitute a waiver of any objection to jurisdiction, service of process or venue. 5 Wright & Miller, *Federal Practice and Procedure:* Civil § 1344. In addition, the May 16, 1986 stipulation between the parties, wherein the parties agreed to class certification and to the production of various documents, specifically states that it "shall in no way affect or impair the right of any party to raise or assert *any* defense or objection" (emphasis added). *See* document 18 at 18. Therefore, by entering a general appearance, filing an unopposed motion for extension of time to respond to the complaint, stipulating to class status and producing corporate records pursuant to the parties' stipulation, Isacs did not waive its right to object to personal jurisdiction.

## III.

▪ Petruzzi's contends that the court should direct notice of Isacs' dismissal to the individual class members and that Isacs should be required to pay for such notice since it stipulated to class certification. Rule 23(c)(2) of the Federal Rules of Civil Procedure does not apply in this instance because that provision deals only with initial notification of the pendency of a class action. Rule 23(e) provides, "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Rule 23(e), however, does not apply to involuntary dismissals, as the following passage indicates:

> Another exception to the mandatory notice requirement in Rule 23(e) occurs when the dismissal is not voluntary. In-

"F.O.B. defense." The court does not herein endorse the F.O.B. defense but does note that the F.O.B. designation is one factor for consideration in determining the strength of the defendant's contacts with the forum state.

asmuch as an involuntary dismissal presumably could not involve collusion or benefit the representative plaintiffs at the expense of the remaining class members, the protection afforded by giving notice to the absentees is not required. Accordingly, a dismissal on the merits, for lack of personal jurisdiction, or on the ground that the suit is not maintainable as a class action does not fall under Rule 23(e), although the court may choose to give notice in order to enable nonparty class members to participate in the decision making process (footnotes omitted).

Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 1797. Since the dismissal of Isacs from this lawsuit in involuntary, Rule 23(e) does not mandate notification to the individual class members, and the court will not direct that notice be sent to the class concerning Isacs' dismissal.

An appropriate Order will enter.