**MONTGOMERY, ZUKERMAN, DAVIS, INC., an Indiana corporation, Plaintiff,**

v.

**Robbert P.A. DIEPENBROCK and Marion Properties & Investments, Inc., Defendants.**

**No. IP88–242–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 21, 1988.

Gustin J. Raikos, Raikos & Raikos, Indianapolis, Ind., for plaintiff.

Bruce D. Brattain, Ancel & Dunlap, P.C., Indianapolis, Ind., for defendants.

## ORDER ON DEFENDANTS' MOTION TO DISMISS

McKINNEY, District Judge.

This cause comes before the Court on the joint motion to dismiss filed by defendant Robbert Diepenbrock and defendant Marion Properties & Investments. The plaintiff has filed a brief opposing the motion, and the defendants filed their reply on July 8, 1988. The questions raised are ready for resolution, and for the reasons set forth below, the Court hereby DENIES defendant Marion Properties' motion to dismiss in its entirety, DENIES Diepenbrock's motion to dismiss in part and GRANTS it in part, QUASHES the service of process attempted upon defendant Marion Properties, GRANTS plaintiff leave to secure proper service upon Marion Properties, and GRANTS plaintiff twenty (20) days leave to amend its complaint to more specifically state its claim against the defendants.

### I. Background

The complaint in this action discloses that plaintiff Montgomery, Zukerman, Davis, Inc. ("MZD"), is an Indiana corporation based in Indianapolis that offers advertising and marketing services. Defendant Robert Diepenbrock ("Diepenbrock") is a Dutch national and is a citizen and resident of the Netherlands. Defendant Marion Properties & Investments ("Marion Properties") is a company incorporated and based in Florida that develops and markets residential subdivisions in the state of Florida. Defendant Diepenbrock is the majority owner of the common capital stock of Marion Properties.

On and prior to July 26, 1987, Marion Properties owned and planned to market at least three different subdivisions in Florida. At some time prior to July 26, 1987, Marion Properties and Diepenbrock requested the MZD advertising agency to prepare a written advertising budget and proposal for the marketing of the Marion subdivisions. Marion Properties requested that the advertising campaign be targeted towards adults over age 45 residing in Indiana, Illinois, and other regional states. The MDZ ad agency prepared such a proposal and budget for the period of October 1, 1987 through March 31, 1988. The written proposal was entitled "Marion Properties Ocala, Florida, Marketing and Advertising Presentation."

On July 26, 1987, defendant Diepenbrock, along with Keith Trumm and Bill Gifford, who are both Florida residents and apparently Marion Properties employees, came to the offices of the MZD ad agency in Indianapolis to view MZD's presentation of its proposed ad campaign for the Florida subdivisions. Following MZD's presentation, defendant Diepenbrock, as spokesman for Keith Trumm and Bill Gifford, stated that "we've allotted the dollars to market these three properties" and "need people like you to get the job done." Defendant Diepenbrock then employed MZD on the spot and directed MZD to work with Keith Trumm, Howard Trumm, and Marion Properties to perform the tasks outlined in MZD's proposal. Diepenbrock stated, "I accept the entire proposal as submitted and personally guarantee payment of the budget amount not to exceed $400,000.00."

Relying on the representations of Diepenbrock and other independent representations similarly made by Howard Trumm, MZD was induced to incur and did incur substantial expenses in implementing the advertising program and otherwise performing the conditions MZD had agreed to perform for the defendants. Prior to actually incurring each such expenditure, MZD obtained the approval of Keith Trumm and/or Marsha James for the defendants. Under the budget that the defendants had approved, MZD submitted invoices in the amount of some $311,000.00, of which defendants paid some $187,000.00. The MZD ad agency has performed all of the conditions to be performed on its part without any complaints about the quality of the work done. Plaintiff has demanded payment of some $180,000.00 remaining to be paid.

Defendants have moved to dismiss the complaint on four different theories. First, defendants argue that this Court lacks personal jurisdiction over Diepenbrock and Marion Properties. Defendants assert that they each had insufficient contacts with Indiana to be haled into this Court.

Second, defendants contend that plaintiff has failed to properly serve them. Diepenbrock argues that service upon him is governed by the Hague Convention on Service Abroad, and asserts that the return of summons from the Netherlands is illegible and undated, and therefore constitutes insufficient proof of service. Marion Properties argues that no officers or agents of its company who are entitled to receive service have been served.

Third, defendants contend that the Southern District of Indiana is an improper venue for this cause, arguing that there were insufficient contacts with this district.

Finally, defendants declare under Rule 12(b)(6) that plaintiff has failed to state a claim for relief. Marion Properties argues that "there are no factual allegations in the Complaint which would reasonably support the inference that a contract was created." Defendant Diepenbrock contends that the complaint in this action can only be read as stating that Diepenbrock made a guaranty of payment, not a contract. He then argues that no contract was made with Marion, and that there was therefore nothing to guarantee. And, he asserts, even if there was a contract to guarantee, Indiana law requires it to be in writing.

This Court will address each argument separately below.

II. Personal Jurisdiction—Minimum Contacts and Notions of Substantial Justice and Fair Play:

It is axiomatic that a federal court must have personal jurisdiction over a defend-

ant's person or property to entertain a suit against the defendant; a federal court may not proceed to a valid judgment in the absence of this type of jurisdiction. 4 Wright and Miller, *Federal Practice and Procedure* § 1063 at 224 (2d ed. 1987). A federal district court enjoys personal jurisdiction over a party in a diversity case such as this one only if a court of the state in which the district court is sitting would have such jurisdiction. *Young v. Colgate–Palmolive*, 790 F.2d 567, 569 (7th Cir.1986); *Nelson by Carson v. Park Industries, Inc.*, 717 F.2d 1120, 1123 (7th Cir.1983), *cert. den.* 465 U.S. 1024, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1984). The determination of whether an Indiana court would have jurisdiction over a non-consenting, nonresident defendant is normally a two-step process. *Giotis v. Apollo of the Ozarks*, 800 F.2d 660, 665 (7th Cir.1986), *cert. den.* 479 U.S. 1092, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987).

The first question is whether the defendant is subject to jurisdiction under the applicable Indiana long-arm statute. If the mechanical provisions of the long-arm are not met, the inquiry is at an end and there is no personal jurisdiction. If defendants are subject to the statute, however, the next question is whether the exercise of personal jurisdiction under the long-arm statute comports with the due process requirements of the Fourteenth Amendment. Where, as here, Indiana's long-arm statute embodied in Indiana Rule of Trial Procedure 4.4 is intended to be coextensive with the full reach of the Due Process Clause, *Nu–Way Systems of Indianapolis, Inc. v. Belmont Marketing, Inc.*, 635 F.2d 617, 619 (7th Cir.1980), the first step is superfluous, and a court need only address the due process requirements. *Giotis*, 800 F.2d at 655; *Griese–Traylor Corp. v. Lemmons*, 424 N.E.2d 173, 180 (Ind.App.1981).

The Supreme Court has set forth the general standards that govern the due process analysis in personal jurisdiction questions. In *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) the Supreme Court explained that due process requires that a nonresident defendant "have certain minimum contacts with [the forum] such that

the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The relationship among the defendant, the forum, and the litigation is the focus of the inquiry into personal jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2581, 53 L.Ed.2d 683 (1977). "[T]he defendant's conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

"By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J. concurring), the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). Where a forum asserts specific jurisdiction over an out-of-state defendant who has not consented to suit there, "this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984), and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182. The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction as a result of 'random,' 'fortuitous,' or 'attenuated' contacts...." *Id.* at 475, 105 S.Ct. at 2183.

In this case, both defendants have several significant contacts with the State of Indiana that are direct and purposeful. First, defendant Marion Properties owned subdivisions in Florida that it wished to advertise and market in midwestern states such as Indiana. Defendants initiated dealings with the Indiana plaintiff by requesting an advertising proposal and budget. The purpose of securing an Indiana advertising agency was, of course, to market the properties in Indiana and neighboring states. Defendant Diepenbrock and agents of Marion Properties then travelled to Indiana on July 26, 1987, to discuss the marketing project with the plaintiff. Defendants employed the Indiana agency on the spot, and thereafter approved more than $300,000 in expenditures made by the plaintiff in marketing the defendant's properties in Indiana. Defendant Diepenbrock gave his personal guarantee at the meeting in Indiana that payment would be made.

Thus, both defendant Diepenbrock and the company he owns are alleged to have initiated contact with an Indiana business, travelled to Indiana, made a contract worth more than $300,000 to market Florida properties to Indiana residents, and approved of significant expenditures incurred by the Indiana business.[1] The defendants thus purposefully availed themselves of the benefits of the forum state. Their contact with Indiana is not "random," "fortuitous," or "attenuated," but instead is part of a concerted, meaningful plan to attract Indiana residents to their Florida properties. Moreover, that plan was to be sustained over an extended period of time. Defendants can no more complain about being subject to suit in Indiana concerning this sizable advertising contract as they could complain were an Indiana homeowner to accuse them of some sort of fraud in their marketing campaign.

This case is thus like many other contract cases where personal jurisdiction has been found proper because of a defendant's purposeful availment of the privilege of conducting activities in the plaintiff's state. *See, e.g., Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d 1209, 1213–14 (7th Cir.1984) (reversing trial court's dismissal on due process grounds; defendant's actions in coming to forum state and injecting its business there mandated a finding of personal jurisdiction); *Wisconsin Electrical Manufacturing Co. v. Pennant Products, Inc.,* 619 F.2d 676, 677–78 (7th Cir. 1980) (visits by defendant's agents to forum state in order to negotiate with plaintiff were significant in the formation of the contract and constituted sufficient contact so as to satisfy due process); *Welles Products Corp. v. Plad Equipment Co.,* 563 F.Supp. 446, 449 (N.D.Ill.1983); *Mac's Eggs, Inc. v. Rite–Way Agri Distributors,* 656 F.Supp. 720 (N.D.Ind.1986). *Compare, Lakeside Bridge & Steel Co. v. Mountain State Construction Co.,* 597 F.2d 596 (7th Cir.1979) (no personal jurisdiction over defendant where plaintiff initiated conduct, plaintiff travelled to defendant's offices, plaintiff modified the contract, performance was not necessarily to occur in plaintiff's state, and defendant never availed itself of the forum state).

Finally, the defendants impliedly admit of sufficient contacts for suit in Indiana. Defendant Diepenbrock, in the part of his motion brought under Rule 12(b)(6) for failure to state a claim discussed *infra,* asserts that any purported guaranty made by him is invalid because *under Indiana law* a guaranty must be in writing. Of course, in order for Indiana law to apply to this action, Indiana's procedural choice of law rules (which must be applied by a federal court in Indiana sitting in diversity, *see Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)), would have to mandate the applica-

---

1. The complaint alleges that both Diepenbrock and Marion Properties made separate and independent undertakings, and that Diepenbrock, as majority owner of Marion Properties, controlled the actions of Marion Properties. Whether Diepenbrock actually made a separate contract himself or simply acted on behalf of the corpo- ration is a question that will, of course, be resolved at a later stage in this litigation. For now, there can be no doubt but that both Diepenbrock and Marion Properties purposefully directed themselves into Indiana sufficient to allow personal jurisdiction.

tion of Indiana substantive law. In order for such law to apply, there would need to be sufficient contacts with Indiana.

Specifically, Indiana's choice of law rules for contract actions use the "most intimate contacts" approach, under which courts are to consider all acts of the parties relating to the transaction and apply the law of the state with which the facts are in most intimate contact. *Eby v. York–Division, Borg Warner*, 455 N.E.2d 623 (Ind.App. 1983). Although choice of law and personal jurisdiction analysis are not identical, they turn on much the same considerations. *See, e.g., Allstate Insurance Co. v. Hague*, 449 U.S. 302, 320–21, n. 3, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981) (Stevens, J. Concurring) (noting the similarity of the two). Here, if Indiana is the state with the most intimate contacts so as to invoke the application of Indiana substantive law, Indiana is also a state that enjoys minimum contacts with the defendant so as to entertain personal jurisdiction over the defendant. Thus, the defendant's own argument for failure to state a claim rebuts his argument for lack of personal jurisdiction.

Thus, in this case there are sufficient minimum contacts to invoke personal jurisdiction over the defendants. "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). "Thus, courts in 'appropriate case[s]' evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.' " *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184. In this case, defendants have failed to "point to other factors that can be said persuasively to outweigh the considerations discussed

above," *Burger King*, 471 U.S. at 482, 105 S.Ct. at 2187, and the Court is satisfied that the exercise of personal jurisdiction over the defendants comports with notions of substantial justice and fair play. Accordingly, the Court finds personal jurisdiction to be present over defendant Marion Properties and defendant Diepenbrock.

III. Service of Process Issues:

Rule 4 of the Federal Rules of Civil Procedure governs service of process in the federal courts. Rule 4 has different provisions for service upon domestic corporations, *see* Rule 4(d)(3), and upon persons residing in a foreign country, *see* Rule 4(i). After discussing general principles of service of process applicable to both defendants, the Court will specifically address the sufficiency of service under each of these Rules.

Service of process is a separate prerequisite to obtaining jurisdiction over a party, one that is independent of the Due Process considerations outlined above. The purpose of service of process is to give defendants notice of the proceedings in sufficient time to prepare an adequate defense. 4A Wright and Miller, *Federal Practice and Procedure* § 1083 at 10 (2d ed. 1987); *Securities and Exchange Commission v. Beisinger Industries Corp.*, 552 F.2d 15, 20 (1st Cir.1977); *Jones v. 3M Co.*, 107 F.R.D. 202, 209 (D.N.M.1984). "The general attitude of the federal courts is that the provisions of Rule 4 should be liberally construed in the interest of doing substantial justice and that the propriety of service in each case should turn on its own facts within the limits of the flexibility provided by the rule itself." 4A Wright and Miller, *Federal Practice and Procedure* § 1083 at 10. However, although the rules governing service are to be liberally construed so long as the party receives sufficient notice, neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir.1986); *see also United States v. Mollenhauer Laboratories*, 267 F.2d 260, 262 (7th Cir.1959) (liberal construction rule cannot be utilized as a

substitute for the plain legal requirement as to the requirements of service); *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir.1988) (actual notice is insufficient to satisfy Rule 4); *In re Daboul*, 82 B.R. 657, 660 (D.Mass.1987) (same).

Where the sufficiency of service is contested, the plaintiff bears the burden of proof. 4A Wright and Miller, *Federal Practice and Procedure* § 1083 at 12; *Familia De Boom v. Arosa Mercantil*, 629 F.2d 1134, 1139 (5th Cir.1980); *Wells v. City of Portland*, 102 F.R.D. 796, 799 (D.Or.1984). The plaintiff, however, has the "advantage of having the facts resolved in its favor" on a motion to dismiss for insufficient service. *Captain International Industries v. Westbury, Chicago, Inc.*, 416 F.Supp. 721, 722 (N.D.Ill.1975), *citing United States Railway Equipment Co. v. Port Huron & Detroit R. Co.*, 495 F.2d 1127 (7th Cir.1974). And, the proper mailing of the summons and complaint raises a rebuttable presumption that service was properly effected. *Nikwei v. Ross School of Aviation*, 822 F.2d 939, 941 (10th Cir.1987); 4A Wright and Miller, *Federal Practice and Procedure* § 1083 at 12. But, entering an appearance or filing a timely motion to dismiss for insufficient service of process does not constitute a waiver of the defense. *See, e.g., Petruzzi's I.G.A. Supermarkets v. Darling–Delaware Co.*, 677 F.Supp. 289, 294 (M.D.Pa. 1987); *Bridgess v. Youree*, 436 F.Supp. 458 (D.C.Okla.1977).

The question of whether valid service exists is generally a question of federal law. 4A Wright and Miller, *Federal Practice and Procedure* § 1083, at 12. In ruling on a motion to dismiss where defective service is shown, the courts have broad discretion to dismiss the action or to retain the case but quash the service that has been made on defendant. 5 Wright and Miller, *Federal Practice and Procedure* § 1354, at 585 (2d ed. 1987). The courts' discretion to retain the action but quash the defective service is particularly expansive where "there is a reasonable prospect that plaintiff will ultimately be able to serve defendant[s] properly." *Id.* at 586. *Accord, Montalbano v. Easco Hand Tools,*

766 F.2d 737, 740 (2d Cir.1985); *Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C.Cir. 1983). The court's reluctance to dismiss an action where there is a possibility that proper service will be effected is understandable "inasmuch as the dismissal would be without prejudice and would probably lead to the reinstitution of the suit ... [thereby] needlessly burden[ing] him with additional expense and delay [while] postpon[ing] the adjudication of the controversy's merits." 5 Wright and Miller, *Federal Practice and Procedure* § 1354, at 586–87.

With these general standards at hand, the Court will now address the sufficiency of service on each of the defendants.

#### A. Service on a domestic corporation—Rule 4(d)(3):

Rule 4(d)(3) of the Federal Rules of Civil Procedure provides that service upon a domestic corporation shall be made "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process...." In this instance, the return receipt from Marion Properties indicates that service was received on March 4, 1988, with the return receipt being signed by an individual named "Terry Fink." Thus, because mailing of the summons and complaint facially appears proper, there is a rebuttable presumption that service under Rule 4(d)(3) was effective.

In support of its motion to dismiss, however, defendant Marion Properties attached an affidavit in which Gary Norman, the general manager of Marion Properties, states that Terry Fink "is not an executive officer, agent, managing agent, general agent, or any other type of agent authorized by law to receive service of process on behalf of Marion Properties...." Because plaintiff has not submitted affidavits or other evidence contraverting defendant's affidavit, the facts alleged in Gary Norman's affidavit are taken as true in ruling on the present motion. 5 Wright and Miller, *Federal Practice and Procedure* § 1353, at 583 (content of uncontroverted affidavits will be deemed admitted for pur-

poses of ruling on a motion to dismiss for insufficient service); *Grantham v. Challenge–Cook Brothers, Inc.*, 420 F.2d 1182 (7th Cir.1969).

Thus, the submissions establish that Terry Fink is not an agent authorized to receive service for Marion Properties under the terms of Rule 4(d)(3). Despite the defendant's obvious notice of the claims asserted, this Court cannot ignore the formal requirements of Rule 4, and is therefore compelled to find that service upon Marion Properties did not satisfy the provisions of Rule 4(d)(3).

There is, however, another mechanism provided for in Rule 4 which the plaintiff asserts it has successfully utilized. Under Rule 4(c)(2)(C)(i), a summons and complaint may also be served upon a defendant (including a corporate defendant) as provided for in the forum state's service of process rules. Service pursuant to the forum state's rules is available in all types of federal actions including diversity cases. *See generally* 4A Wright and Miller, *Federal Practice and Procedure* § 1115, at 244.

In this case, then, service upon Marion Properties could be found proper under Indiana's service of process rules. Plaintiff argues that service was proper under Indiana's Trial Rule 4.4(A), which provides that a nonresident "submits to the jurisdiction of the courts of this state ... as to any action arising from: (1) doing business in this state." Plaintiff's contention is that because Marion Properties was doing business in this state, the service of process upon Marion was effective. In making this

argument, however, plaintiff leapfrogs an important provision of Rule 4.4(A).

Subdivision (1) of Rule 4.4(A) quoted above speaks only to jurisdiction ("submits to the jurisdiction" by "doing any business in this state"); subdivision (1) does *not* address whether the service of process, that is, the notice procedures used by the plaintiff, were effective. A later subdivision of Rule 4.4, specifically subdivision (B), speaks to the sufficiency of service, and provides, "A person subject to the jurisdiction of the courts of this state under this rule may be served with summons: (1) As provided by Rule ... 4.6 (service upon organizations)...." Thus, in order for the plaintiff's service to be effective under Indiana's rules of service, the guidelines of Indiana Trial Rule 4.6 would have to be met.

■ Indiana's Rule 4.6, much like its federal counterpart of Fed.R.Civ.Proc. 4(d)(3) discussed above, provides that service upon a domestic corporation may be made "upon an executive officer thereof, or if there is an agent appointed or deemed by law to have been appointed to receive service, then upon such agent." The analysis under Indiana's rule, then, is nearly identical to the analysis under Federal Rule 4(d)(3). Under either rule, the plaintiff has simply failed to rebut the affidavit of Gary Norman. Because plaintiff has failed to show that Terry Fink, the individual whose name appears on the return receipt, is an officer or resident agent of Marion Properties, service upon the corporation is defective under both the federal and state rules.[2]

---

**2.** Plaintiff also generally asserts that defendant has waived the defense by filing an appearance and requesting an extension of time. Plaintiff argues that Rule 4(A), which states that an Indiana court acquires jurisdiction over a party who "enters an appearance," mandates such a finding here. However, this Court finds that Rule 4(A) must be read in conjunction with Rule 12. Specifically, Rule 12(b)(5) allows the defense of insufficiency of service to be raised in the answer or by way of a motion to dismiss. Rule 4(A)'s reference to the entry of an appearance as conferring jurisdiction is thus tempered by the provisions of Rule 12. This conclusion is supported by the Indiana Court of Appeals decisions in *State v. Omega Painting, Inc.*, 463 N.E. 2d 287 (Ind.App.1984), and *Chapman v. Chap-*

*man,* 512 N.E.2d 414, 416 (Ind.App.1987) ("a general appearance does not act as a waiver of the defense of lack of personal jurisdiction").

To hold otherwise would produce one of two untoward results. Defendants who might have a valid defense under Rule 12(b)(5) for defective service would have to either subject themselves to a default judgment for failure to appear, instead of merely filing an appearance and an extension of time before filing the 12(b)(5) motion, or else file a 12(b)(5) motion without proper investigation into the facts and law of the case. It is, of course, not always immediately apparent within 20 days of receiving the complaint whether service is defective. To require defendants to file their 12(b)(5) motions without

■ Given the fact of defective service upon Marion Properties, the issue of remedy must be addressed. As discussed previously, this Court has broad discretion to opt against dismissal for want of service of process and instead choose to quash the defective service. 5 Wright and Miller, *Federal Practice and Procedure* § 1354, at 585 (2d ed. 1987). The Court's discretion to retain the action but quash the defective service is particularly expansive where there is a reasonable prospect that plaintiff will ultimately be able to properly serve the defendant. *Id.* at 586. *Accord, Montalbano v. Easco Hand Tools,* 766 F.2d 737, 740 (2d Cir.1985); *Novak v. World Bank,* 703 F.2d 1305, 1310 (D.C.Cir.1983).

In this case, there is no evidence to suggest that service cannot be obtained upon Gary Norman, the general manager who supplied the affidavit, or upon another officer or resident agent of Marion Properties. Because a dismissal would thwart the very purpose of the federal rules to secure the just, speedy, and inexpensive determination of every action, *see* Fed.R.Civ.Proc. 1, the Court finds it in the interests of justice to simply quash the attempted service upon Marion Properties, retain the action against this defendant, and allow plaintiff leave to secure proper service under Rule 4(d)(3).

B. *Service upon an individual in a foreign country:*

■ Service of process upon an individual in a foreign country is governed by Rules 4(e) and 4(i). Rule 4(i) provides that service is sufficient if it is made: "(A) in the manner prescribed by the law of the foreign country ...; or (C) upon an individual, by delivery to the individual personally ...; or (D) by any form of mail, requiring a signed receipt...." In this case, the law of the foreign country is the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. *See Ackermann v. Levine,* 788 F.2d 830, 838 (2d Cir.1986). This international treaty, which has been ratified by the United States and the Neth-

erlands, allows for service by registered mail. *Ackermann,* 788 F.2d at 840–41.

In this case, plaintiff utilized the procedures provided for by the Hague Convention. The summons and complaint were sent by registered mail on April 25, 1988, to defendant Diepenbrock's address in Bergschenhoek, Holland, and a signed return receipt was delivered to plaintiff's attorney in Indianapolis. The form of the return receipt states, "This receipt must be signed by the addressee or by a person authorized to do so by virtue of the regulations of the country of destination...." The return receipt in question is then signed in a somewhat indecipherable manner, and dated "29 IV 88–17 Bergschenhoek." Thus, the receipt was received in Diepenbrock's hometown, apparently on April 29, 1988. Defendant claims that because the signature on the return receipt is illegible, service is improper. Defendant does not, however, deny that this is his or her agent's signature, nor does he deny being served.

This case is thus like the scenario presented in *Lighting Systems v. International Merchandising Associates,* 464 F.Supp. 601 (W.D.Pa.1979). In *Lighting Systems,* defendants claimed defective service because the signature on the return receipt was indecipherable, yet defendants did not deny that they had been served. The court there held that service was established, particularly because the defendants obviously had notice of the action. This, coupled with their lack of evidence to refute the return receipt, was sufficient to sustain a finding of proper service of process. 464 F.Supp. at 605.

So it is in this case, for the plaintiff's return receipt establishes a prima facie case of proper service. The proper mailing of the summons and complaint raises a rebuttable presumption that service was properly effected. *Nikwei v. Ross School of Aviation,* 822 F.2d 939, 941 (10th Cir. 1987); 4A Wright and Miller, *Federal*

the possibility of further evaluation of the complaint would have the inevitable result of making the 12(b)(5) defense a part of *every* initial responsive pleading or motion. Neither the

rules governing civil procedure nor those governing professional ethics can be construed to encourage such a result.

**1462**

*Practice and Procedure* § 1083 at 12. The defendant has not come forth with affidavits contradicting this presumption, and defendant obviously has notice of the action thereby supporting the presumption of valid service. Accordingly, service upon defendant Diepenbrock is sufficient.

### IV. Proper Venue:

■ Both defendants assert that venue in this district is improper. Proper venue of diversity actions is governed by 28 U.S.C. § 1391, which provides:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

\* \* \* \* \* \*

(d) an alien may be sued in any district. 28 U.S.C. § 1391(a), (d). Defendants argue, without supporting authority, that "the only federal district court which can hear the matters asserted herein is the United States District Court, Middle District of Florida, Ocala Division, which court has jurisdiction over the area encompassing defendant Marion's principal place of business in Ocala, Florida." Such an argument, however, ignores the very purpose of diversity jurisdiction and the plain language of the venue provisions of § 1391.

It is undisputed in this case that the MZD advertising agency, the only plaintiff in this case, is a resident of Indiana. Thus, under the express language of § 1391(a), this action is properly brought in the Southern District of Indiana because it is the district in which "all plaintiffs" reside. *See, e.g. Munter v. Weil Corset Co.,* 261 U.S. 276, 43 S.Ct. 347, 67 L.Ed. 652 (1923); *Local 15 of Independent Workers of Noble County v. International Brotherhood of Electrical Workers,* 273 F.Supp. 313 (N.D. Ind.1967); *Galaxy Intern., Inc. v. White Stores, Inc.,* 88 F.R.D. 311 (D.C.Pa.1980). The language of § 1391(a) is clear that venue is proper in the district where all plaintiffs *or* all defendants reside. The meaning of the word "or" needs no explanation or citation of authority.

Section 1391(a) also provides that venue in a case against an alien is proper in any district. Here, there is no showing but that defendant Diepenbrock is an alien. Accordingly, for venue purposes, this action may be maintained against him in any federal district court. *See, e.g., Totalplan Corp. of America v. Lure Camera Ltd.,* 613 F.Supp. 451 (W.D.N.Y.1985); *Translinear, Inc. v. Republic of Haiti,* 538 F.Supp. 141 (D.D.C.1982).

Thus, as to both defendants, venue in this district is proper under § 1391(a).

### V. Does Plaintiff's Complaint Fail to State Claims for Relief?

Defendants raise separate issues with regard to their Rule 12(b)(6) motions asserting failure to state a claim. Defendant Marion Properties argues that the complaint does not allege a contract between Marion Properties and the plaintiff. Defendant Diepenbrock then argues that the complaint against him can only be construed as charging a guaranty, and that under Indiana law, such a guaranty must be in writing to be enforced.

In considering a 12(b)(6) motion, the Court must of course take all allegations in the complaint as true and construe all inferences liberally in favor of the plaintiff. *Mathers Fund, Inc. v. Colwell,* 564 F.2d 780 (7th Cir.1977). Dismissal is only proper where it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ In this case, it is clear that dismissal as to defendant Marion Properties would be improper. Plaintiff alleges that Marion Properties requested a budget and advertising proposal, that agents of Marion Properties travelled to Indiana to review the proposal, and that Marion Properties employed the plaintiff to carry out the proposal. There is thus at the minimum an allegation of an oral contract concerning advertising services between MZD and Marion Properties.

■ As to defendant Diepenbrock, dismissal is also improper as to the allegations

in the complaint relating to the formation of a contract between Diepenbrock and MZD. Defendant argues that the complaint only alleges an oral guaranty. However, a fair reading of the complaint can also lead to the conclusion that Diepenbrock himself made a personal contract with the plaintiff. Specifically, paragraph 10 of the complaint alleges that "defendant Diepenbrock on July 26, 1987, employed MZD on the spot...." Such an allegation is sufficient to state a claim for relief based on an independent and original oral contract.

■ The complaint can also be interpreted as charging that Diepenbrock made an oral guaranty. Specifically, MZD alleges that Diepenbrock "personally guarantee[d] payment of the budget amount not to exceed $400,000.00." This allegation can be interpreted to charge Diepenbrock with a special promise to answer for the debt of Marion Properties. Diepenbrock argues that such an allegation fails as a matter of law because Indiana law requires a guaranty to be in writing. In deciding this issue, the Court must first determine what substantive law should apply to the action, and then apply that law to the facts presented.

■ As noted previously, the defendant has impliedly argued that Indiana substantive law should apply to this action. In deciding what law to apply to a diversity action, this Court must use the forum state's choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Indiana's choice of law rules for contract litigation apply the most intimate contacts approach. *Eby v. York–Division, Borg–Warner*, 455 N.E.2d 623 (Ind.App.1983); *Suyemasa v. Myers*, 420 N.E.2d 1334 (Ind.App.1981). " 'The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact.' " *Eby*, 455 N.E.2d at 626, *quoting W.H. Barber Co. v.*

*Hughes*, 223 Ind. 570, 63 N.E.2d 417, 423 (1945).

In this case, just as in *Eby*, the most intimate contacts of the action are centered in Indiana, not Florida. The transaction was initiated by defendant's travel to Indiana, the plaintiff is located in Indiana, the contract was performed in Indiana, and the audience of the marketing program was in Indiana. *Cf. Eby*, 455 N.E.2d 623 (ironically analagous situation involving most intimate contacts with Indiana rather than Florida). Thus, Indiana substantive law will apply to this action.

Under Indiana law, no action can be prosecuted upon a guaranty to answer for the debt of another unless the promise is "in writing, and signed by the party to be charged...." *Ind. Code* § 32–2–1–1 (West 1982). It is well settled that a promise to pay the debt of a third person is unenforceable unless in writing. *Southern Indiana Loan & Savings v. Roberts*, 42 Ind.App. 653, 86 N.E. 490 (1908); *Bank of Linn Grove v. Stults*, 93 Ind.App. 129, 176 N.E. 707 (1931). Thus, to the extent that plaintiff's complaint charges an oral guaranty, it must fail as a matter of law. This does not mean that plaintiff might not be able to establish an original contractual undertaking on Diepenbrock's part as discussed above, it simply mandates that no further litigation of a claim for relief under a guaranty theory is possible.[3]

Accordingly, defendant Marion Properties' motion to dismiss for failure to state a claim is denied. Defendant Diepenbrock's motion to dismiss is denied in part and granted with prejudice as to any claim against Diepenbrock for a guaranty to answer for the debt of Marion Properties. However, because it is unclear from the complaint exactly what claims for relief are asserted against defendant Diepenbrock and in what capacity Diepenbrock is alleged to have made a contract, the plaintiff is granted twenty (20) days leave to amend its complaint. Plaintiff's amended complaint should specifically state what the

---

**3.** It should be noted that the result would be the same under most states' laws, including Florida's. *See, e.g., Fla.Stat.* § 725.01; *Weingart v.*

*Allen & O'Hara, Inc.*, 654 F.2d 1096 (5th Cir. 1981).

grounds for relief are as to each defendant, whether any grounds are framed in the alternative, and in what capacity Diepenbrock is alleged to have entered any contractual agreements.

VI. Conclusion:

In summary, Marion Properties' motion to dismiss filed on May 20, 1988, is denied in its entirety. Defendant Diepenbrock's motion to dismiss filed on the same day is denied in part and granted in part. Personal jurisdiction is proper as to both defendants. Service of process as to defendant Diepenbrock is sufficient. As to defendant Marion Properties, the attempted service is quashed, but the action against it is retained and plaintiff is granted leave to secure proper service upon Marion Properties. Venue in this district is proper as to both defendants. Defendant Diepenbrock's motion to dismiss is granted with prejudice solely as it relates to plaintiff's allegations charging Diepenbrock with a guaranty to answer for the debt of Marion Properties. Plaintiff is granted twenty (20) days leave to amend its complaint to clarify the grounds upon which relief is sought.

IT IS SO ORDERED.